GERTRUDE ROBINSON et al., Appellants, v. AVERY KORNS and SARAH KORNS.

Division One, May 31, 1913.

1. **CITIES: Land Dedicated for Streets: Plat Filed: Title: How Devested.** Land once dedicated for streets by the proper making and filing of a plat, continues to be held by the county for that use until title is devested as provided by statute or until the execution of .the use becomes impossible.

2. **EQUITY: Mistake: Reforming Deed.** In 1857 A filed a town plat of Ashland in Buchanan county. At that time a fence extended along the east line of the southwest quarter of the northwest quarter of section three therein, which has remained in that position ever since. This fence is in the middle of a street appearing on the plat as Chambers avenue, and upon that street front lots five and six as shown by the plat. Chambers avenue has never been improved. A sold lots five and six in 1867, and by mesne conveyances they were acquired by defendant Korns in 1893. Korns conveyed to Turner and Turner conveyed to the plaintiff land described as "all the east eighty feet of lots five and six, Ashland, as shown by the plat thereof." Plaintiff now brings ejectment against Korns for the land so described, and Turner and wife are impleaded. Defendant answers with a general denial and a plea that he sold to Turner land described as "commencing 660 feet north of southeast corner of southwest quarter of the northwest quarter of. section three, etc., thence west eighty feet, thence south to the south line of lot six, Ashland, thence east eighty feet to the east line of said southwest quarter of the northwest quarter," etc., or, in other words, a tract of land running eighty feet west from the fence in the middle of Chambers avenue, instead of eighty feet west from the east front of lots five and six as shown by the plat. Defendant then prays for a reformation of the deeds from him to Turner and from Turner to the plaintiff in accordance with his contention. Korns testifies that before selling the land to Turner they both went to a lawyer's office and discussed the dedication of the street, but came to no conclusion, and then the deed was made, delivered and accepted conveying the east eighty feet of lots five and six. *Held*, no showing of such mutual mistake as to call for a reformation of the deed.

Appeal from Buchanan Circuit Court.—*Hon. Lucian J. Eastin*, Judge.

REVERSED AND REMANDED (*with directions*).

*James Limbird* for appellants.

(1) The sole issue tried under cross-bill was one of mistake in making both deeds. "To justify the reforming of an instrument the pleading must allege, and the evidence must show, that a mistake was made, and that said mistake was mutual." Henderson v. Beasley, 137 Mo. 199; Adkins v. Tomlinson, 121 Mo. 487. In this case no mutual mistake of grantors and the grantees is alleged in the cross-bill when the two deeds were made, and no mistake is proven. "A description in a deed will be reformed for mistake only where the evidence is most clear and convincing." Fanning v. Doan, 139 Mo. 410; Sweet v. Owen, 109 Mo. 7. (2) "Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only on a certainty of error." 1 Story's Eq. Jur., secs. 157-161; Pomeroy's Eq. Jur., sec. 859; Tesson v. Ins. Co., 40 Mo. 36; Sweet v. Owen, 109 Mo. 9; Worley v. Dryden, 57 Mo. 233; Fanning v. Doan, 139 Mo. 410; Brown v. Gwin, 197 Mo. 499; Benn v. Pritchett, 163 Mo. 571; Zeilda Forsee Inv. Co. v. Ozenberger, 132 Mo. App. 409; Weissenfels v. Cable, 208 Mo. 515; Fidelity & Cas. Co. v. Lumber Co., 133 Mo. App. 637; Redding v. Lumber Co., 127 Mo. App. 625; Bolt and Nut Co. v. Car Co., 210 Mo. 715; Brown v. Givin, 197 Mo. 499; Dougherty v. Dougherty, 204 Mo. 228; Bobb v. Bobb, 7 Mo. App. 504.

*Duncan & Utz* for respondents.

(1) Equity will reform a deed where a mutual mistake has been made by each party. "If an instrument fails to embody the actual agreement made or transaction determined upon by the parties thereto, reformation is the proper remedy when a case is made out by proper proof." 34 Cyc. 907; Henderson v. Beasley, 137 Mo. 199; Redding v. Lumber Co., 127 Mo.

App. 625; Cooper v. Deal, 114 Mo. 527; Parker v. Vanhoozer, 142 Mo. 621. ''In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to, contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing.'' 2 Pom. Eq. Jur., sec. 845; 1 Story's Eq. Juris. (13 Ed.), sec. 115; Williamson v. Brown, 195 Mo. 332. (2) Degree of proof necessary to justify reformation. Williamson v. Brown, 195 Mo. 332; Parker v. Vanhoozer, 142 Mo. 621; Cooper v. Deal, 114 Mo. 527. (3) Was the mistake mutual? And what is necessary to show it? 34 Cyc. 936-8; Henderson v. Beasley, 137 Mo. 199; Sicher v. Rambousek, 193 Mo. 113. (4) Even though the appellate court may think that the testimony would have warranted a different decree in an equitable suit, some deference is due to the opinion of the trial court before whom the witnesses appeared personally and testified. Bank v. Murray, 88 Mo. 191; Johnson v. Realty Co., 177 Mo. 581; Parker v. Vanhoozer, 142 Mo. 621.

BROWN, C.—Ejectment brought March 16, 1910, by Gertrude Robinson against the defendants Korns and wife for possession of a lot in St. Joseph described in the petition as ''the east eighty feet of lots five and six, Ashland, as shown by plat thereof; being a subdivision of a part of the northwest quarter of section three, township fifty-seven, range thirty-five in Buchanan county, Missouri.'' The defendants answered, impleading Samuel J. Turner and wife, who were made parties defendant against their protest. The answer of the Kornses consisted of (1) a general denial, and (2) a plea that prior to September 12, 1907, they sold Mr. Turner a piece of land described as follows:

"Commencing six hundred and sixty feet north of southeast corner of the southwest quarter of the northwest quarter of section three, township fifty-seven, range thirty-five; thence west eighty feet; thence south to the south line of lot six, Ashland; thence east eighty feet along said south line of lot six to the east line of said southwest quarter of the northwest quarter of section three, township fifty-seven, range thirty-five; thence north to the place of beginning."

That on that day they executed to Turner a warranty deed in which the land so sold was described as in the petition. The difference between the land described in the petition and in the answer is that the lot described in the answer lies thirty feet farther east than that described in the petition, so that it includes the east *fifty* feet of lots five and six, Ashland, and thirty feet lying immediately east of it to the middle of a street appearing upon the Ashland plat. The answer further states that Turner and wife, on March 14, 1910, sold and delivered to plaintiff the possession of the same property sold Turner by the defendants, and executed to plaintiff a deed in which they erroneously described the land as it was described in the deed to them from Korns and wife, and the plaintiff thereupon took possession of the ground that was actually sold and pointed out to her and also insisted on taking possession of the other thirty feet lying immediately west of it, making one hundred and ten feet in all. The prayer of the answer is that the erroneous description in the deed of defendants to Samuel J. Turner and in the deed from Turner and wife to plaintiff be reformed and corrected so as to conform to the true description set forth in the answer, and for general relief. Turner interposed a general demurrer, and when it was overruled answered, putting in issue the affirmative averments of the answer, and the plaintiff replied to the same effect.

It appeared upon the trial that in 1857 one Fred
Smith, being the owner of the land included, filed a
town plat of Ashland in the recorder's office of Buch-
anan county.  That this in all respects conformed to
the act then in force concerning the plats of towns and
villages (R. S. 1855, chap. 48) is not questioned.  At
that time Mr. Smith had a fence extending north and
south along the east line of the southwest quarter of
the northwest quarter of the section, which, by repair-
ing and replacing has been maintained in the same po-
sition ever since.  This fence is in the middle of a street
appearing on the plat by the name of Chambers avenue.
Lots five and six, as platted, front on this street.  There
is also a travelled road along the north side of lots
five and fourteen extending west from Chambers av-
enue to another platted street called Ashland avenue,
which is also open.  Chambers avenue has never been
improved, and the abutting owners on each side seem
to occupy the land of which it consists to the fence,
although there is no evidence of valuable improve-
ments having been placed on it since the plat was made,
or of any claim of ownership of the ground in the
street until this controversy arose.  Smith continued
to own the land in question, including lots six and
thirteen and five and fourteen, until July, 1867, when
he conveyed to one Glick, and by mesne conveyances
it was acquired by defendant Avery Korns in 1893 from
one Strignitz and wife, by warranty deed, using the
same description with reference to the lot numbers of
the Ashland plat as are used in the deed from Smith
to Glick.  These four lots constituted a solid body of
land something more than two hundred feet north
and south and five hundred feet more or less east and
west.  The deeds of Strignitz to Korns, from Korns
to Turner and from Turner to plaintiff, all referred
directly to the plat of Ashland for the description of
the lots.  The two latter deeds describe the land con-
veyed as follows:  "All the east eighty feet of lots

five and six, Ashland, as shown by plat thereof, being a subdivision of a part of the northwest quarter of section three, township fifty-seven, range thirty-five.''

Of his sale and conveyance of the land to Turner, Mr. Korns testifies that he took Mr. Turner down there and showed him the east end of the ground and they traded on that principle; he was to have the east eighty feet up to the fence. He doesn't think there were any lots mentioned any more than the eighty feet of ground until they came to describe it in the deed. He was then at a loss to describe it and some one said that the east eighty feet of lots so and so would make a fair description of the eighty feet. He presumed he was deeding him the eighty feet of ground lying next to the fence. He attempted to do so. Nothing was said about lots five and six at that time. He then proceeded as follows:

''I heard of this controversy getting up so I went to Mr. Limbird's office with Mr. Turner before I sold it—Mr. Turner came out there and asked me to come and see about the ground. I went down to Mr. Limbird's office; he spoke about this street being dedicated there. I asked him a few questions about it, and he said he didn't know this and didn't know that, but as far as making any agreement with Mr. Limbird or anybody else in regard to that eighty feet west of that road is a positive falsehood; I never agreed under any circumstances to make any other proposition; Mr. Turner and I went away from his office to Mr. Austin's office and we took the abstract and was looking at it; it shows I have 530 feet of ground on the north line. I told him, I said I couldn't see where there was anything different from the eighty feet I showed him and conveyed to him I could do. I says, 'I don't want to do anything unfair,' and I told him I would investigate. I didn't agree to do anything with him, and when he says I agreed to make a deed for eighty feet west of that road he tells a falsehood.''

He also said that he never was in Mr. Limbird's office except the one time that he went there with Mr. Turner, and then they could not agree on anything. He never went back. Ashland had been included in the city of St. Joseph about a year at the time of the trial.

The cause was tried before the court without a jury. The facts were found substantially as stated in the answer and judgment was rendered thereon for defendant, for the reformation of both deeds as prayed.

I. The controlling question in this case is whether, in the deed from Korns to Turner, they intended to include in the description of the land conveyed the east fifty feet of lots five and six as shown by the plat of Ashland, and the west thirty feet of Chambers avenue, instead of the east eighty feet of those lots. Although the defendant has asked the reformation of the deed from Turner to plaintiff, it cuts no figure in this case, except as the intention of the parties to it may throw light upon the question of notice to her of his alleged equities. In attacking the sufficiency of these deeds he necessarily admits that he himself is without paper title to the land he is trying to force upon his grantee instead of the lands to which he had title, and actually conveyed to him; for the deed under which he claims contains the same vice of description as the deeds which he attacks. It describes no part of the street which he now claims to have sold. By this deed he expressly covenants that he was seized of an indefeasible estate in fee simple, that it was free from incumbrances, and for further assurance, and if, with respect to the portion which he now desires to insert instead of a part to which he had a good title under his deed he was without title, or if it was incumbered with an easement

*Streets: How Title to Land Dedicated May be Devested.*

or trust which entitled the public to its possession and use, this would be a circumstance strongly tending to show the improbability of his present claim. For this reason, if for no other, the condition of his title to the strip in dispute is important.

No question is made in the record or argument with respect to the sufficiency of the plat of Ashland made in July, 1857. Section 8, chapter 158, Revised Statutes 1855, which was in force at the time of this dedication, provides as follows: "Such maps and plats of such towns and villages, and additions, made, acknowledged, certified and deposited with the recorder, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named or intended for public uses, in the county in which such town, village or addition is situate, in trust and for the uses therein named, expressed or intended, and for no other use or purpose." This section has frequently been before this court, which has not failed to give effect to the plain intent of the Legislature as expressed by its language. The object of investing the public with the fee instead of a mere easement is evidently to give it complete discretion and control with respect to the time and manner of its improvement. The growth of the municipality is encouraged and promoted by making it safe to purchase land upon these platted streets with the certainty that they will be held in trust for the purpose to which they have been dedicated until such time as the necessity shall arise for their improvement. Sometimes, to be sure, the development may be so retarded as to indicate that the plat has been a mistake, but the Legislature foresaw this, and provided a complete remedy by the early enactment of what is now section 9506, Revised Statutes 1909, which permits the vacation of the streets, avenues or roads dedicated on such a plat as this upon the petition of the owners of the lots lying on both sides of or fronting them. This proceeding can then

only be had upon ample public notice and secures the protection of public as well as private interests. It illustrates perfectly the nature of the trust upon which these lands are held by the counties. Its beneficiaries are not only the general public but the owners of abutting lands, and all others having a special interest in the existence of the street.

Mr. Smith, as we have already said, platted this addition and dedicated its avenues in 1857. At that time the fence which defines the bone of contention in this case was there. He was under no obligation to destroy it, and leaving it until the public should be ready, in the execution of its trust, to improve the street and to remove it for that purpose constituted no adverse claim of ownership. He sold these lots in 1867, conveying them by a deed which referred to his act of dedication. What is now section 1886, Revised Statutes 1909, was then in force. It provides: "Nothing contained in any statute of limitation shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this State." The application of that section to such cases as this was before this court in the City of Columbia v. Bright, 179 Mo. 441, and in considering the instructions it said:

"As we have seen, there never was any adverse possession by defendant's grantors of that part of the strip sued for lying west of the west line of the old Gentry House until 'Garth Hall' was built in 1877 or 1878, and hence there was no ground upon which to predicate a right or title in defendant by adverse possession to that part of the strip on which the old Gentry House was not located, since the first entry thereon was made after the statute of 1865 went into effect, since which time no person can acquire title by adverse possession to a part of a public street. . . . The fact that the city when grading and macadamizing Ninth street left the old Gentry House and the

old sidewalk adjoining it in the condition in which they had been for many years previous thereto could not confer any legal right or title upon the defendant's grantors, to that part of the street thus left unimproved. The city authorities have the right to improve the streets, or any part of them, in any manner and to any extent that to them may seem proper and for the public interest, and it goes without saying, that in the circumstances of this case there cannot be found any equity to estop the plaintiff from asserting its title to any part of the strip in question. The only defense the defendant had to plaintiff's action as to any part of that strip which was within the boundaries of Ninth street was adverse possession prior to the · Act of 1866, and to that defense the instructions on this issue should have been confined and to so much of the strip as had been covered by the old Gentry House.''

The appropriation of lands to public uses by the very act which enables the owner to treat them as urban property, and to realize the commercial advantages of such treatment, deserves, and has received, the cordial encouragement of the State. Its towns, villages and cities come into existence, or are extended, with the land for streets and public grounds paid for in advance by those who happen to be remunerated by their own enterprise. It forbids, by penal laws, the selling of urban lots until their representations that land will be forthcoming for these public uses have been fully carried out by their formal dedication. And finally, it offers itself, through the agency of the county as a trustee for the benefit of the public, including the purchasers of lots, to hold the title for the purposes of these uses. When the plat is· executed and filed the title vests in the county by operation of the statute, and not by any act of the trustee or other State agency. It can only be devested by the process provided in the statute, or when the execution of the

use becomes impossible. No mere lapse of time or adverse possession will destroy it. [Gaskins v. Williams, 235 Mo. 563.] The provision of the Act of 1887 (now embodied in section 10446 of the Revised Statutes of 1909) that "non-user by the public for a period of ten years continuously of any public road shall be deemed an abandonment of the same" has no application in this case. Making it as broad as we can by literal interpretation, aided by every possible presumption which may arise from necessity or expediency, it only applies to public roads existing or which have existed, and not to the title of lands voluntarily conveyed in trust to be used for the purpose of establishing streets thereon as they shall be needed. [State v. Muir, 136 Mo. App. 118; State ex rel. v. Busse, 153 Mo. App. 466.] The statute creating this last class of titles covers the whole ground of their origin and extinguishment, by a symmetrical plan. If all platted streets in our cities, towns and villages which have not yet been opened and improved, although more than ten years have elapsed since the filing of the plats dedicating them, should at once and automatically be extinguished, and the land surrendered to the owners of abutting lots, to be purchased or condemned and paid for before it could be used for the purpose to which it has already been dedicated, the result would be startling. Such an effect ought not to be attributed to the use of a word, perhaps broader than necessary, in connection with a matter entirely disconnected with the subject. Such a rule would impose upon the legislator the duty, in selecting words to express himself about the matter in hand, to ascertain whether there is not something else of which he has never dreamed, but still within the range of legislative power, to which they might also be applied. There is nothing in Johnson v. Rasmus, 237 Mo. 586, which tends to question our conclusion in this respect. That case was dealing

with the very matter to which this statute was designed to apply.

II.    The respondent's claim to affirmative relief necessarily admits, as we have seen, that his deed to Turner is sufficient in its description to convey the thirty feet in controversy off the west side of the east eighty feet of lots five and six, and this admission is well founded. It follows that unless some reason has been shown why, in equity, the deed ought not to be operative for that purpose, the appellant should recover the disputed strip; for the respondent admits that he is in possession against the terms of his deed. In such a case we must first look to the pleadings for an explanation—for a statement of some reason why the legal title ought not to prevail. There are two grounds upon which equity sometimes affords such relief—fraud and mistake. Of the first there is no hint in the record—either in the pleadings, or evidence, or argument. Of the other, the pleadings are equally silent. The answer contains no charge of such mutual mistake in the deed as will authorize a change in its terms by a court of equity. It simply charges that the premises really sold were erroneously described in the deed. There is no attempt to give a reason for this misdescription. There is no charge that it was not the deliberate act of the parties with their eyes open to the consequences. Were we at liberty to disregard the insufficiency of the pleading and give judgment upon the evidence we would not find our condition improved. Mr. Korns testified that before selling the land to Mr. Turner they both went to a lawyer's office and discussed the matter of the dedication of this street, but came to no conclusion, and made the deed.

The rule that must be applied in these cases is that the mistake to be corrected must have been made

*Margin note: Equity: Mistake: Reforming Deed.*

in drawing the instrument and not in making the contract out of which it grew. [Parker v. Vanhoozer, 142 Mo. 621, 629.] This mistake must be mutual, and not unilateral. That is to say, both must agree to what the instrument shall contain, and both must act in executing it upon the belief that it is so written. This rule is illustrated in Dougherty v. Dougherty, 204 Mo. 228, 238, in which the scrivener acted for the grantees. This court said: "His mistake was the mistake of the grantees, but not the mistake of the grantor, for whom he in no way acted, under the proof in this case. The mistake is purely unilateral and one which courts of equity do not reform. [Grand Lodge A. O. U. W. v. Sater, 44 Mo. App. 1. c. 453; Meredith v. Holmes, 105 Mo. App. 1. c. 352; Brocking v. Straat, 17 Mo. App. 1. c. 305; Benn v. Pritchett, 163 Mo. 1. c. 572; Miller v. Railroad, 162 Mo. 1. c. 440-441.]"

In the same case, quoting from Meredith v. Holmes, 105 Mo. App. 1. c. 352, this court stated the rule with reference to the quantity of proof required in such cases as follows: "So strong is the legal presumption that a written contract, unambiguous and complete in itself, contains all the terms of the agreement between the parties, that parol evidence will not be heard in an action on a contract to vary or contradict its terms. [Evans v. Mfg. Co., 118 Mo. 548; Tracy v. Iron Works, 104 Mo. 193; Black River Lumber Co. v. Warner, 93 Mo. 374; Bunce v. Beck, 43 Mo. 266.] Correlated to this rule, is the rule in equity suits to correct a written contract on the ground of mistake, that casts upon the party asserting the mistake the burden of overthrowing, by evidence that is clear and convincing, the prima-facie presumption that the contract exhibits the ultimate agreement of the parties, and of showing that the mistake was mutual. [Judson v. Mullinax, 145 Mo. 630; Parker v. Vanhoozer, 142 Mo. 621; Sweet v. Owens, 109 Mo. 1; Gaylord v.

Insurance Co., 40 Mo. 13; Benn v. Pritchett, 163 Mo. 560.]

Applying these rules to the case now before us we find that after full discussion by the parties, not only between themselves but with a lawyer, of the very point on which they now split, the effect of the dedication of Chambers avenue upon the transaction in which they were engaged, the grantor drew, signed and acknowledged, and the grantee accepted and recorded the deed in its present form, conveying land that the grantor really owned. In this suit it is sought to "reform" it by substituting land which he does not own, so that it will carry a breach of warranty on its face. Under these circumstances it is peculiarly appropriate that the reformation should require evidence clear, cogent and convincing that it was agreed between the parties that the description contended for by appellant should be used in the deed and not the description which it does contain, that the failure to do so was the result of the mutual mistake of both and that they believed, at the time the execution of the deed was completed by delivery and acceptance, that it was so written. On the contrary, there is absolutely no evidence of such a mutual mistake. The appellant testified, it is true, that he took Turner to the ground and showed him the fence as the line, but this, without more, was only a representation that the east line of lots five and six, to be conveyed in the deed, was at the fence, and not that a street was the subject of the transaction instead of the lots, and that the deed was accepted upon the theory that it was so written.

The judgment of the circuit court is accordingly reversed and the cause remanded with directions to deny the affirmative relief asked in the answer; to dismiss the allegations therein in the nature of a crossbill; to dismiss also the defendant Samuel J. Turner with his costs; and to otherwise proceed to final judg-

ment in the ejectment in accordance with the law as stated in this opinion. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges ·concur.