**DANCIGER OIL & REFINING CO. OF TEXAS et al. v. BALL.**

**No. 6108.**

Circuit Court of Appeals, Fifth Circuit.

Jan. 9, 1932.

Wm. G. Boatright, of Kansas City, Mo., and S. A. L. Morgan, of Amarillo, Tex., for appellants.

W. M. Lewright, of Pampa, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Bell Oil & Gas Company brought a bill of interpleader to determine which of several claimants was entitled to receive oil royalties from certain lands in Gray county, Tex. W. J. Ball, one of the claimants, owned a royalty interest and had signed a written contract to sell it to M. S. Ingleright, another claimant, delivering to a banker a deed thereto to be held in escrow until the title should be approved and the purchase money paid. Ingleright, having paid the banker the price and demanded the deed, prayed in his answer that the contract be specifically performed; and Ball in his answer, contending that he had signed the contract and deed through mistake as to their contents induced by fraud of Ingleright's agent, J. H. McCracken, prayed for their cancellation. Decree was given in Ball's favor and Ingleright appeals, being joined by Danciger Oil & Refining Company, which is interested with Ingleright.

The District Court over objection admitted parol evidence of the negotiations pri-or to the making of the writings. Notwithstanding the rule that parol negotiations are merged in a resulting written contract, and notwithstanding the Statute of Frauds (Rev. St. Tex. 1925, art. 3995) which requires contracts respecting land to be evidenced by writing, it is well settled that equity has jurisdiction in a proper case to cancel a written contract respecting land for mistake or fraud which caused its execution, and will hear parol evidence to prove the fraud or mistake; and upon the same grounds parol evidence is admitted to defeat a prayer for specific performance. Pomeroy, Eq. Jur. (4th Ed.) §§ 859, 860; Story, Eq. Jur. (14th Ed.) §§ 228, 229. In order to show that a mistake did occur and wherein it consisted, the antecedent agreement which the writing was intended to express must necessarily be proven. No error was committed in receiving the evidence.

But we are of opinion that the evidence does not justify setting aside the writings and refusing specific performance. The burden is not, as held by the District Judge, upon Ingleright, because the execution of the written contract and escrow deed is admitted, and they being fair on their face, specific performance will be decreed of course unless Ball sustains his contention of mistake and fraud. As to these, a heavy burden rests upon him. While equity will disregard the parol evidence rule to the extent of hearing the entire transaction to see if a fraud has been perpetrated or a relievable mistake has been made, the fraud or mistake must be clearly and convincingly shown. In Howland v. Blake, 97 U. S. 624, 626, 24 L. Ed. 1027, it is said: "The burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. * * * A deliberate deed or writing, are of too much solemnity to be brushed away by loose and inconclusive testimony." In the Maxwell Land Grant Case, 121 U. S. 325, 7 S. Ct. 1015, 30 L. Ed. 949, reiterated in United States v. Budd, 144 U. S. 154, 12 S. Ct. 575, 36 L. Ed. 384, the language is: "When, in a court of equity, it is proposed to set aside, to annul, or correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and it cannot be done upon a bare preponderance of evidence

which leaves the issue in doubt." In this case the fraud and mistake claimed relate, not to the subject-matter of the agreement, but to the execution of the instrument itself. Ball claims that he agreed to sell to McCracken not only the Gray county royalty for $5,500, but also one in Donley county for $6,400, intending the contract to be indivisible, and that McCracken was to have Cook, a lawyer suggested by Ball, prepare the papers; and that when he came to sign them he was in a hurry to join some friends who were waiting for him in an automobile, and without reading the papers, but only asking if they contained the agreement, he signed, supposing that both royalties were included, whereas only the royalty in Gray county was. The District Judge who heard the witnesses testify states that they all impressed him as telling the truth as they understood it. We think the claim of fraud in procuring the signatures is unsustained. There was no confidential relationship. The papers to be signed were typewritten and cover but three pages of the record. The consideration of $5,500 was written in green ink in three places in the face of the contract and in one in the deed. A draft for $5,500, drawn by McCracken on Ingleright in Ball's favor to be used when the title should be approved, accompanied the papers. Ball could have read them all in three or four minutes. A glance would have sufficed to show that $5,500 and not $11,900 was the consideration. Ball testifies that they were handed to him to read and that no one prevented him from reading. He asked Cook about them, and Cook told him they were just like those drawn for him in a similar deal a few weeks before, except that the parties and consideration were different. This was the exact truth. Ball in his sworn pleading made two days before the trial did not contend that McCracken said anything, but that he fraudulently kept silent, yet he testified that he asked McCracken also if the papers contained the trade like they made it, and that McCracken said, "Yes." McCracken and Cook testified that the only conversation was with Cook, and that Cook specifically mentioned the consideration of $5,500. Certainly no fraudulent device or intentional misstatement to keep Ball from reading is shown, and this is necessary to excuse Ball's negligence and prevent his signing from being taken conclusively as an adoption by him of the contract as written, no matter what may previously have been talked. McCracken testified that being a broker he had Ingleright's authority to buy the Gray county royalty and accordingly bought it, but had only

a prospective customer for the Donley county royalty and therefore agreed with Ball for a thirty-day option on that for $6,400. The agreement was speedily reached touching the Donley county royalty. The later trading for the Gray county royalty was overheard by three others, one of whom assisted in it by suggesting to Ball that the price of $6,400 for the Donley county royalty was high, that territory being unproven, and that he could therefore afford to take McCracken's offer of $5,500 for the other, Ball asking $6,000. The trade was thus made. These witnesses did not hear the initial negotiations about the Donley county royalty, and their testimony that an option was not mentioned is not conclusive on that point. But the Donley county royalty is not here in issue, and the exact terms reached about it are not material except to explain McCracken's treating the two deals as separable in preparing papers for them. The narrow question is whether in signing papers for the Gray county royalty only at $5,500 Ball acted under a mistake relievable in equity in believing that the Donley county royalty at $6,400 was also included. Whether a sale of two things for considerations separately fixed for each is divisible or indivisible is not always easily to be decided. The testimony of Ball and his friends tends to make it appear that Ball was looking at it as indivisible; while McCracken, acting for two separate persons, regarded the deals as divisible and acted accordingly, not seeking to get the option signed until several days later in order to extend the time available on it. Ball, while the papers were being drawn, gave orders to his lawyers to prepare the abstracts on the Gray county property, but took no steps to exhibit his title to the Donley county property. After reading the duplicate of the written contract which he took with him after signing, he did nothing at once wholly to disavow it. Cook and his partner Smith testify that several days after signing Ball was urging them to hurry their opinion on the Gray county title so that the purchase price might be paid. Ball told the banker who was holding the papers in escrow that he had made "two deals," one of which had not been included in the papers, but instead of recalling them entirely told him not to deliver the deed without Ball's consent. Ball made but lame efforts to communicate his dissatisfaction to McCracken and did not in fact do so until McCracken approached him to get the option signed. These things tend to show that Ball was during this time willing to treat the deals as divisible. There is nothing unconscionable in Ingleright's demand that Ball

shall carry out the written contract to sell to him the Gray county royalty at a price which Ball admits he agreed to take for it. Such disappointment as Ball may feel in not having a sale to another person of the Donley county royalty bound in the same contract he must charge to his own inattention in making the written memorial of his trade. The courts have gone very far in asserting the duty of one who knows he is about to execute a formal, written obligation to inform himself of its exact terms, and, if he fails to do so, in holding him bound to those therein expressed. 6 R. C. L., Contracts, § 43; Upton v. Triblicock, 91 U. S. 45, 23 L. Ed. 203; Bailey v. Lisle Mfg. Co. (C. C. A.) 238 F. 257; Great Western Mfg. Co. v. Adams (C. C. A.) 176 F. 325; Hazard v. Griswold (C. C.) 21 F. 178; Taylor v. Fleckenstein (C. C.) 30 F. 99. "If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party." Chicago, St. Paul, M. & O. Ry. Co. v. Belliwith (C. C. A.) 83 F. 437, 440. That the signer was busy and was assured by the other party who prepared the contract that it was as agreed on was held not to relieve him of his obligation, the other party not admitting any departure from the true agreement, in Stoddard Mfg. Co. v. Adams, 122 Ga. 802, 50 S. E. 915. See, also, Walton Guano Co. v. Copelan, 112 Ga. 319, 37 S. E. 411, 52 L. R. A. 268.

The judgment is therefore reversed, with direction to enter a decree in favor of appellants for specific performance by delivery of the deed from Ball to Ingleright.