## HAYES v. TRAVELERS INS. CO.
### No. 1555.

Circuit Court of Appeals, Tenth Circuit.
Nov. 24, 1937.
Rehearing Denied Dec. 28, 1937.

Kelly Brown, of Muskogee, Okl., for appellant.

Richard K. Bridges, of Tulsa, Okl. (Al C. Thomas, of Oklahoma City, Okl., and Shirk & Bridges, of Tulsa, Okl., on the brief), for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

On June 16, 1924, Mrs. Pluma Delore Hayes made application to The Travelers Insurance Company for a five-year convertible term life insurance policy for $10,000.00 with "No. 1 Disability Provision."

On June 26, 1924, the insurance company issued to Mrs. Hayes its convertible five-year term policy, hereinafter called the term policy. It provided for the payment of $10,000.00 in the event of death of the insured and $100.00 monthly in the event of permanent total disability of the insured, and for conversion if "continued in force for five years" as of the date of its expiration "to the life plan at the attained age of the insured." The premium provided was $57.10, payable semi-annually; the policy recited that it included $12.20 for disability benefits.

On April 23, 1929, the insurance company issued a policy effective June 25, 1929, to convert the term policy into a policy of ordinary life with the same death and permanent total disability benefits as the term policy. The policy provided for a semiannual premium of $119.00 and recited that it included $12.20 for permanent total disability benefits. It was sent to the Oklahoma City office of the insurance company. There was no proof that Mrs. Hayes ever saw this policy. It was returned with the request that it be rewritten for $5,000.00 with disability benefit No. 1.

On July 24, 1929, the insurance company issued to Mrs. Hayes its ordinary life policy, hereinafter called the converted policy, effective June 25, 1929. It provided for the payment of $5,000.00 in the event of death and $100.00 monthly permanent total disability benefits. It stipulated a premium of $59.50, payable semi-annually and recited that it included $6.10 for disability benefits.

The insurance company forwarded the converted policy to its Oklahoma City office. It was delivered to Mrs. Hayes on December 4, 1929, by George Feild, a representative of the insurance company. On delivering the converted policy, Feild had Mrs. Hayes sign a written application for conversion of the term policy to an ordinary life policy for $5,000.00 with "No. 1 Disability Provision."

The semiannual premium for $100.00 per month disability benefits is fixed in the rate manual of the insurance company at $12.20.

Mrs. Hayes transacted her negotiations for the conversion of the term policy with Mr. Church, manager of the insurance company at Kansas City, Missouri. She had no direct negotiations with any representative of the insurance company at the Oklahoma City office.

Mrs. Hayes paid the premiums on the converted policy as they fell due. On December 24, 1932, she became totally and permanently disabled. She submitted proof of her disability and claimed monthly benefits of $100.00 per month as provided in her policy. The insurance company refused to pay in excess of $50.00 per month as total and permanent disability benefits, asserting that due to mistake the converted policy provided for $100.00 instead of $50.00 monthly disability benefits.

On May 10, 1934, the insurance company filed its bill in equity praying that the converted policy be reformed to provide for permanent total disability benefits of $50.00 instead of $100.00 monthly.

It based its alleged right to reformation on the ground of mutual mistake and the provisions of section 10512, Okl.Stat. 1931 (36 Okl.St.Ann. § 195), which in part reads as follows:

"No life insurance company, association or corporation doing business in this State shall make or permit any distinction or discrimination in favor of individuals between insurants (the insured) of the same class and equal expectation of life in the amount of payment of premium or rate charged for policies of insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contract it makes."

In her answer Mrs. Hayes denied mutual mistake and alleged the policy was written in accordance with her oral understanding with Church.

The material evidence on the controverted issues was as follows:

Mrs. Hayes testified that on June 24, 1929, she and her sister, Mrs. Crutcher, went to the Kansas City office of the insurance company and met Mr. Church; that she told him her policy would expire the next day and she wanted to reduce it to $5,000.00 and retain the $100.00 monthly permanent total disability benefits; that Church said, "We are writing a policy, a form of policy that you are entitled to under the old contract"; that he figured the premium rate and stated it would be $59.-

50; that she asked him if it would include $100.00 monthly disability benefits and he replied in the affirmative, stating it would give her $5,000.00 life insurance and $100.00 monthly disability benefits; that she paid him the premium at that time; that thereafter George Feild, a representative of the insurance company in Oklahoma, delivered the converted policy to her; that when he delivered the policy he said, "Mrs. Hayes, this is a very fine policy you have and one we are not writing any more"; that he read the face of the policy to her in the presence of her mother, including the provision for $5,000.00 death benefits and $100.00 disability benefits.

Mrs. Crutcher testified that she accompanied Mrs. Hayes to the insurance company's Kansas City office in June, 1929; that Mrs. Hayes requested the policy be reduced to $5,000.00; that Church asked Mrs. Hayes what means of support she had for herself and boy, and that Mrs. Hayes replied, "I haven't any"; that Church then stated, "I believe it would be better to have the disability feature stand as it is"; that Church looked up the rate in a book and stated what $5,000.00 death benefits and $100.00 monthly disability benefits would cost, and that Mrs. Hayes stated to him that she desired to keep the $100.00 monthly disability benefits.

Mrs. Haizlett, mother of Mrs. Hayes, testified that she was present when Feild delivered the converted policy. She corroborated Mrs. Hayes' testimony as to what Feild said at the time he delivered the policy.

Church testified that he was manager of the Kansas City office of the insurance company; that in the Spring of 1929 Mrs. Hayes came to the office with her term policy and stated that she wanted to make some adjustment because she could not afford to pay the premium; that as a result of his conversation with her the converted policy was issued; and that it was executed at the home office of the insurance company.

After Mrs. Hayes' and Mrs. Crutcher's testimony had been offered, Church was recalled and testified as follows: "I heard the testimony of Mrs. Crutcher about the disability benefits. I had a conversation about that, but the substance of the conversation about the $100.00 disability benefits was not the same as her testimony." He did not deny the testimony of Mrs. Hayes.

Mr. Dimon, assistant secretary of the company in charge of policy conversions, testified that "No. 1 Disability Provision" meant $10.00 monthly disability benefits for each $1,000.00 of life insurance; that the company did not issue policies in excess of $10.00 per month disability benefits for each $1,000.00 of life insurance; that the policy issued to Mrs. Hayes was more favorable to the insured than any policy the insurance company had issued to any other person in Oklahoma; that the provision for $100.00 instead of $50.00 monthly permanent total disability benefits was inserted as the result of a clerical error; that the insurance company did not intend to issue a policy with disability benefits in the ratio of $20.00 per month to each $1,000.00 of life insurance; and that the mistake was discovered June 23, 1933, when Mrs. Hayes made her disability claim.

The trial court granted the reformation as prayed. Mrs. Hayes has appealed.

■ Where an agreement has been reached by the parties as to the terms of a contract, but either through the mutual mistake of the parties, or through mistake upon the part of one and fraud or inequitable conduct on the part of the other, the written instrument drafted to evidence the contract fails to express the real agreement and intention of the parties, equity may grant reformation.[1] However, there must be an antecedent agreement which the written instrument evidences, and the mistake must have been in the drafting of the instrument and not in the making of the contract which it evidences.[2] And absent fraud or inequitable conduct on the part of one, the mistake must be mutual. Russell v. Shell Petroleum Corp. (C.C.A. 10) 66 F.2d 864, 867.

[1] Russell v. Shell Petroleum Corp. (C.C.A.10) 66 F.2d 864, 866; Columbian National Life Ins. Co. v. Black (C.C.A. 10) 35 F.2d 571, 573, 71 A.L.R. 128; Continental Oil Co. v. Mulich (C.C.A.10) 70 F.2d 521, 524; International Harvester Co. v. Mississippi Land Co. (C.C. A.8) 43 F.2d 17; Southern Surety Co. v. United States Cast Iron Pipe & F. Co. (C.C.A.8) 13 F.2d 833; Connecticut Fire Ins. Co. v. Oakley Imp. Bldg. & Loan Co. (C.C.A.6) 80 F.2d 717, 719.

[2] Russell v. Shell Petroleum Corp. (C.C.A.10) 66 F.2d 864, 867; Robinson v. Korns, 250 Mo. 663, 665, 157 S.W. 790; Curtis v. Albee, 167 N.Y. 360, 60 N.E. 660; Williston on Contracts, Rev. Ed., Vol. Five, § 1549.

■ The burden is upon the person alleging mutual mistake to establish it by evidence of the clearest and most satisfactory character. A mere preponderance of the evidence is not sufficient to satisfy the burden of proof.[3]

■ It may be that the officers of the insurance company would not have executed the policy had they been conscious of the fact that the clerk in the home office had written it so as to provide for disability benefits of $100.00 per month. But the contract as written was in exact accord with the agreement reached between Mrs. Hayes and Church and submitted to the home office of the insurance company for approval. It was written exactly as she intended it. Clearly there was no mutual mistake in the drafting of the policy.

It is true the premium recited for disability benefits was less than in the term policy, but it was computed by Church, and in response to her inquiry he expressly stated it covered $100.00 monthly disability benefits. It is reasonable to assume that she accepted and relied on his statements, especially when they were confirmed by the policy as written. When the policy was delivered Feild told her it was a very fine policy and one the insurance company had discontinued writing, implying it was very favorable to the insured. The fact that the application executed by Mrs. Hayes when the policy was delivered applied for "No. 1 Disability Provision," which meant $10.00 monthly disability benefits for each $1,000.00 of life insurance, is not of moment. There was no proof that Mrs. Hayes knew the meaning of the phrase. Furthermore, the language respecting disability was identical in the application for the term policy and the application for the converted policy, and the provision respecting disability benefits was identical in both policies. It was, therefore, reasonable for her to assume that "No. 1 Disability Provision" meant the same in both applications.

We are of the opinion the evidence failed to establish either fraud or inequitable conduct on the part of Mrs. Hayes.

She made it emphatic to Church she desired to retain the $100.00 monthly disability benefits. He assured her the converted policy would· provide for that amount. The policy approved by the home office did so provide. She paid the premiums as stipulated in the policy. Now that she is totally and permanently disabled and cannot obtain disability insurance, it would be unjust under the circumstances to deny her the right to receive indemnity as provided in the policy.

The converted policy was executed by the president, department secretary, and recorder of the life department of the insurance company. Dimon testified that the policy provided for $100.00 instead of $50.00 monthly disability benefits due to "a clerical error made by the people who were checking the file." It is a fair assumption that the officers executed the converted policy without reading it, relying on their clerical assistants. Had they read it, it is reasonable to suppose they would have discovered the error.

■ One having the capacity and opportunity to read a contract, who executes it without reading it, in the absence of fraud or imposition, or special circumstances excusing his failure to read it, is charged with knowledge of its contents and cannot avoid the contract by asserting that it did not express what he intended.[4]

The converted policy was delivered to Mrs. Hayes, she accepted it, paid the pre-

3 Columbian National Life Ins. Co. v. Black (C.C.A.10) 35 F.2d 571, 573, 71 A.L.R. 128; Shell Petroleum Corp. v. Corn (C.C.A.10) 54 F.2d 766; National Reserve Ins. Co. of Illinois v. Scudder (C.C.A.9) 71 F.2d 884, 886; International Harvester Co. v. Mississippi Land Co. (C.C.A.8) 43 F.2d 17, 23; Skelton v. Federal Surety Co. (C.C.A.8) 15 F.2d 756, 757; Snell v. Atlantic F. & M. Insurance Company, 98 U.S. 85, 89, 90, 25 L.Ed. 52; Maxwell Land-Grant Case, 121 U.S. 325, 381, 7 S.Ct. 1015, 30 L.Ed. 949; Philippine Sugar Estates Development Co. v. Government of Philippine Islands, 247 U.S. 385, 391, 38 S.Ct. 513, 62 L.Ed. 1177; 53 C.J. p. 1044, § 209.

4 Upton, Assignee v. Tribilcock, 91 U. S. 45, 50, 23 L.Ed. 203; Whitney Co. v. Johnson (C.C.A.9) 14 F.2d 24, 25; Chicago, St. P., M. & O. Ry. Co. v. Belliwith (C.C.A.8) 83 F. 437, 439; United States Fidelity & Guaranty Co. v. Naylor (C.C.A.8) 237 F. 314, 318; Hoshaw v. Cosgriff (C.C.A.8) 247 F. 22, 26; Wagner v. National Life Ins. Co. (C.C.A. 6) 90 F. 395, 407; Danciger Oil & Refining Co. of Texas v. Ball (C.C.A.5) 54 F.2d 908, 911; Hickman v. Sawyer (C.C.A.4) 216 F. 281, 283; Bass Furniture & Carpet Co. v. Finley, 129 Okl. 40, 263 P. 130, 132.

miums, and suffered disability before the insurance company brought the alleged error to her notice. It follows that the insurance company is bound by the provisions of the contract as written and is not entitled to relief either at law or in equity. Wagner v. National Life Ins. Co. (C.C.A.6) 90 F. 395, 407.

While the policy is more favorable to Mrs. Hayes than other policies issued by the insurance company in Oklahoma and violates section 10512, supra (36 Okl.St. Ann. § 195), that fact does not render the policy void or afford a basis for reformation. In National Fidelity Life Ins. Co. v. Gerard, 175 Okl. 219, 52 P.2d 1, 3, the court in passing on the effect of section 10512, supra, held a violation of the statute did not render the policy void and that the insurer was not entitled to reformation in the absence of mutual mistake or mistake on the part of the insurer, and fraud or inequitable conduct on the part of the insured. The court said:

"Our statute does not provide that a policy issued in violation of the above statute shall be void. * * * There was no evidence introduced that tended to prove that the assured knew that the annuity payment was more than he was entitled to. The average citizen does not know how premium rates and payments to the beneficiary are arrived at. Those are matters that only a trained actuary can figure.

"We think the rule applicable to the facts of this case was laid down by the Supreme Court of Texas in American Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397, 400, where the court said: 'The rule is established that a court of equity will not withhold relief where it is necessary in the interest of justice and of sound public policy to enforce a contract which is inhibited by statute, but is not declared void and is not otherwise open to attack, provided the parties are not in pari delicto, and he who is least culpable seeks relief. 1 Pomeroy's Equity Jurisprudence (3d Ed.) § 403.' "

We are, of course, bound by the interpretation placed on the statute by the Supreme Court of Oklahoma.

The decree is Reversed with instructions to dismiss the bill. The costs will be assessed against the insurance company.