**C. S. FOREMAN COMPANY, a Corporation, Appellant,**

v.

**GREAT LAKES PIPE LINE COMPANY, a Corporation, Appellee.**

**No. 16280.**

United States Court of Appeals Eighth Circuit.

Feb. 3, 1960.

Paul Van Osdol, Jr., Kansas City, Mo., for appellant.

John C. Thurlo and Ralph M. Jones, Kansas City, Mo., for appellee.

Before SANBORN, VAN OOSTER-HOUT and BLACKMUN, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff, C. S. Foreman Company, appeals from final judgment dismissing Count I of its complaint against defendant, Great Lakes Pipe Line Company. Count I of the complaint seeks reformation of a written contract covering construction work to be performed by plaintiff for defendant. The complaint contains seven additional counts not directly involved in this appeal.[1] Final judgment was entered dismissing Count I.[2]

Jurisdiction based upon diversity of citizenship and the requisite amount is established.

In the summer of 1952 defendant found it necessary to have some emergency work done on its pipe line in the Missouri River near Onawa, Iowa. Defendant, through its Chief Engineer, Charles C. Keane, entered into negotiations with Charles S. Foreman, president of plaintiff corporation, looking towards contracting for the performance of the needed work. At Keane's request, Foreman submitted two bids for the work, a cost-plus bid and a lump sum bid. Plaintiff was advised that defendant preferred

---

1. To a large extent, the seven remaining counts seek damages on the basis of the contract reformed as requested in Count I.

2. The court in its judgment as amended determined, pursuant to rule 54(b) of the Rules of Civil Procedure, 28 U.S.C.A., that there is no just reason for delay and expressly directed the entry of final judgment dismissing Count I.

to proceed on the cost-plus basis. Plaintiff's original cost-plus bid was not accepted. Further negotiations were carried on by Keane and Mr. Foreman. It was the understanding of all parties that the mutual rights and obligations of each of the parties would be evidenced by a written contract which would be drawn up and executed on behalf of both parties.

Thereafter a written contract was prepared by defendant and was signed on behalf of plaintiff, a Texas corporation, by its duly authorized officers, Charles S. Foreman, President, and his wife Helen McShane Foreman, Secretary, on August 29, 1952, and was sent to defendant. James B. Lawson, vice president in charge of construction, acting within the scope of his authority, signed the contract on behalf of the defendant.

A completed and signed copy of the contract was mailed to and received by plaintiff on or about September 9, 1952.

The written contract provides with reference to plaintiff's compensation basically as follows:

"$18,500 per month rental of heavy equipment; $4,500 for furnishing small tools listed; $8,500 for moving on the job; $4,000 for moving off the job; cost-plus 15% of labor; of furnishing any of the material listed; of furnishing any of the supplies listed; of the purchase of small tools in excess of those listed; and of insurance. * * *"

The contracted work was completed in January, 1953. Payments required by the written contract have been made. This action was commenced on February 1, 1957.

Plaintiff's contention is that under the real agreement existing between the parties, plaintiff in addition to the compensation provided in the written contract is entitled to be reimbursed for all other costs incurred by it in the performance of the contract plus 15% for overhead, and that by reason of mutual mistake such provision was omitted from the written contract and that plaintiff is entitled to have the contract reformed to express the true agreement between the contracting parties. The complaint shows that the other costs which plaintiff seeks to recover are principally wear and tear damage to plaintiff's machinery, damage to and loss of equipment and small tools, and damage caused to plaintiff's dredge by its sinking in the river.

In dismissing Count I the court states:

" * * * it is my conclusion in this case that the plaintiff has not sustained the extremely heavy burden that is cast upon it in a case of this kind, seeking to reform a solemn written agreement, and under those circumstances, since the plaintiff has not sustained the burden imposed on it under the law, there can only be one decision on this first count of this proceeding, and that is that judgment will have to be entered for the defendant on Count One."

Such dismissal was based upon findings of fact and conclusions of law, reading:

"Findings of Fact.

"1. That Plaintiff's Exhibit 3 was read and signed by the president of plaintiff corporation and its secretary and treasurer, and the plaintiff's corporate seal affixed thereto on August 29, 1952, and was thereafter signed by a vice-president and the secretary of the defendant corporation, and its corporate seal affixed thereto, and returned to the plaintiff on or about September 9, 1952.

"2. There was no evidence that the defendant intended to agree to pay 'the cost plus 15% of all repairs and replacements required to restore plaintiff's equipment and machinery to as good condition as when received upon the job site, plus rental at the agreed rate during the period of time required for such restoration; the value plus 15% of any of plaintiff's equipment or tools lost or damaged beyond repair in the performance of the work; and all

other costs to plaintiff incurred in or arising from the performance of the work, plus 15%', as claimed in the amended complaint, Paragraph 5(f), (g) and (h).

"3. There was evidence that plaintiff billed the defendant for repairs and parts and certain other costs, for which payment was not specified in Exhibit 3, and defendant paid a portion of such costs so billed.

"4. Plaintiff did not dispute the content of Exhibit 3 as not being the true agreement until after the work thereunder had terminated, although the secretary-treasurer of the plaintiff company testified she noticed a discrepancy concerning cost of repairs when she was reading it before she executed it.

"Conclusions of Law.

"1. Evidence of payments made for costs not provided for in the contract does not supply the clear, convincing and satisfactory proof required to justify reformation of the written contract.

"2. Plaintiff is estopped from asserting the contract was other than as written, by its officers' actions in reading, executing and retaining the same, and in invoicing the defendant thereunder and receiving payments thereon.

"3. The 'General Conditions' are a part of the contract and paragraph .231 thereof, by which plaintiff assumes loss of or damage to property, including its own, arising out of the work, is a valid provision and also constitutes a bar to reforming the contract as prayed to provide that defendant should pay such loss plus 15%.

"4. The provision of paragraph .390 that 'there are no agreements, understandings, conditions, warranties or representations, oral or written, express or implied, with reference to the subject matter * * * that are not merged (t)herein or superseded (t)hereby' is also a valid provision and a bar to reformation."

Plaintiff urges that it is entitled to a reversal for the following reasons:

1. The trial court clearly erred in its findings and conclusions that the contract should not be reformed because the testimony almost conclusively showed a mutual error in omitting material provisions from the written document.[3]

2. The trial court clearly erred in concluding that the terms of the written contract per se barred reformation.

■ Reformation is available to correct a mutual mistake on the part of the contracting parties. Blevins v. Thompson, Mo., 255 S.W.2d 787; Employers' Indemnity Corporation v. Garrett, 327 Mo. 874, 38 S.W.2d 1049; Commercial Standard Ins. Co. v. Maryland Cas. Co., 8 Cir., 248 F.2d 412.

■ In the Commercial Standard Ins. Co. case, supra, the court had occasion to consider the standard of proof required under Missouri law to warrant reformation, and found such standard to be stated in the Blevins case, supra, as follows:

" 'The reformation of an instrument may be had upon evidence that is clear and satisfactory, convincing the mind of the chancellor that the instrument does not express the contract the parties agreed upon, a mutual mistake.' " 248 F.2d at page 416.

■ In the same case the court reasserts its well established rule, reading:

3. While the plaintiff in paragraph 12 of its complaint alleges as an alternate ground that it is entitled to reformation because of misrepresentations of the defendant relied upon by the plaintiff, plaintiff in its brief on appeal makes no claim that it is entitled to reformation on the basis of fraud on the part of the defendant or its agents. Upon this record plaintiff is clearly not entitled to any reformation based upon fraud.

" 'In a nonjury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law.' "

Appellant freely admits the heavy burden resting upon it to establish reformation, stating:

"For good reason the courts have been reluctant to disturb the sanctity of the formal contract. The stability of the business world depends upon such judicial reluctance. Consequently equity will only exercise this power of reformation, when the Chancellor is convinced by clear and satisfactory proof that the written contract through error or omission does not accurately embody the agreement the parties intended.
* * *

"Appellant further realizes that this burden has been increased on appeal, as the trial court's findings of fact are presumptively correct and should not be set aside unless clearly erroneous."

■ It is well established that the type of mistake warranting reformation is a mutual mistake shared by all the contracting parties. In Employers' Indemnity Corporation v. Garrett, supra, 38 S.W.2d at page 1053, the Missouri Supreme Court states:

"Where parties have deliberately put their engagement into writing, in such terms as import a legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole of the engagement of the parties and the extent and manner of their undertaking have been reduced to writing, and parol evidence is not permitted to vary or contradict the terms of such writing, or to substitute a new or a different contract for it."

The court then states that parol evidence may be received to show that the written instrument does not express the true intention of the parties by reason of fraud or mistake, and continues:

"To warrant the reformation of a contract by altering or expunging some of the terms contained in it, there must be a mutual mistake, that is, a mistake shared in by both parties."

In McLean Construction Co. v. Globe Indemnity Co., D.C.W.D.Mo., 168 F.Supp. 318, at page 323, it is said:

"The high remedy of reformation is available only within sharply limited areas. The mistake affording ground for the relief must be mutual. It must appear that both parties have done what neither intended. The proof must be clear and convincing."

45 American Jurisprudence, Reformation of Instruments, § 56, page 618, states:

"A mutual mistake is one which is reciprocal and common to both parties, each alike laboring under the same misconception in respect to the terms of the written instrument."

In Robinson v. Korns, 250 Mo. 663, 157 S.W. 790, at page 794, we find the following:

"The rule that must be applied in these cases is that the mistake to be corrected must have been made in drawing the instrument, and not in making the contract out of which it grew. Parker v. Vanhoozer, 142 Mo. 621, 629, 44 S.W. 728. This mistake must be mutual, and not unilateral. That is to say, both must agree to what the instrument shall contain, and both must act in executing it upon the belief that it is so written."

The court then quotes with approval from Dougherty v. Dougherty, 204 Mo. 228, 238, 102 S.W. 1099, at page 1102, as follows:

"So strong is the legal presumption that a written contract, unam-

biguous and complete in itself, contains all the terms of the agreement between the parties, that parol evidence will not be heard in an action on a contract to vary or contradict its terms. (Citations omitted.) Correlated to this rule, is the rule in equity suits to correct a written contract, on the ground of mistake that casts upon the party asserting the mistake the burden of overthrowing, by evidence that is clear and convincing, the prima facie presumption that the contract exhibits the ultimate agreement of the parties, and of showing that the mistake was mutual."

45 American Jurisprudence, Reformation of Instruments, § 46, page 609, states:

"There must be an antecedent agreement which the written instrument evidences, and the mistake must have been in the drafting of the instrument, not in the making of the contract."

To the same effect, see Hayes v. Travelers Ins. Co., 10 Cir., 93 F.2d 568, at page 570, 125 A.L.R. 1053.

■ When the law as above stated is applied to the facts of this case, we are satisfied that the trial court reached a permissible conclusion based upon substantial evidence in finding that the plaintiff had not met the burden of establishing its right to reformation of the written contract on the ground of mutual mistake.

The evidence clearly shows that both parties intended that their mutual obligations be evidenced by a written contract. It is, of course, true that there were preliminary negotiations leading up to the written contract. At defendant's suggestion, plaintiff submitted bids for the work here involved, both on a lump sum basis and a cost-plus basis. While defendant subsequently advised plaintiff that it preferred a cost-plus type of contract, defendant at no time accepted the cost-plus bid plaintiff had made. Defendant sent its chief engineer Keane to negotiate with plaintiff. As a result of such negotiations many of the terms of the proposed contract were agreed upon, some resulting in material changes from plaintiff's original offer. Keane's testimony is:

"The conference ended with the conclusion that he would prepare a contract approved by his officers and Construction Committee and then send it to Foreman for him to sign if he considered it a proper consideration of what transpired between them, and then the Company would execute it. He did not purport personally to enter a contract with Foreman, and he implied as much to Foreman."

Mr. Foreman, as a witness, testified that "he knew there was to be a written contract."

The completed contract included, among others, the following provisions:

".391. The Contract Documents comprise the entire agreement between Company and Contractor, and there are no agreements, understandings, conditions, warranties or representations, oral or written, express or implied, with reference to the subject matter hereof that are not merged herein or superseded hereby.

".401. This contract shall not be binding upon the Company until executed on its behalf by its President or a Vice-President, and until a copy so executed has been delivered to Contractor. Commencement of performance hereunder shall not be construed to constitute a waiver of this requirement."

We believe that it is entirely clear that both contracting parties understood that their contractual relationships were to be evidenced by a written contract and that no binding contractual obligations were entered into between the parties prior to the excution and delivery of the written contract, and that it was the intention of all that all prior negotiations be merged in such contract.

Plaintiff's evidence as to its negotiations with Keane goes no further than to show that Keane agreed in the preliminary negotiations that defendant should reimburse the plaintiff for the costs of repairing parts worn out on the job. Mr. Foreman admitted that there was no discussion about the repair of broken parts as opposed to worn out parts. Keane's testimony tends to indicate that it was his feeling that the defendant should be responsible for the cost of replacements to plaintiff's equipment caused by running wear. However, Keane made it clear to Foreman that he had no authority to enter into any contract and that any contractual agreements would be reflected by a written contract. Vice President Lawson, who was the party authorized to execute the contract here in dispute, on behalf of defendant testified that he had no knowledge of any agreement to reimburse for repairs. His testimony is:

"The written contract comprises the entire contract. It is the entire agreement of which I was advised."

The court under this record certainly was not compelled to find that the parties had entered into any binding oral contractual relationship with reference to the provisions plaintiff here seeks to have added to the contract by means of reformation.

Mr. and Mrs. Foreman, President and Secretary of the plaintiff corporation who signed the written contract on behalf of plaintiff, are intelligent persons experienced in the contracting business and have seen and executed many construction contracts, including prior contracts with defendant. Plaintiff's authorized officers had ample opportunity to read the contract before signing and testify that they did read it. Mrs. Foreman states that upon reading the contract she discovered that it contained no provision for reimbursement for equipment repairs. She states that she protested about this but was assured by Mr. Keane that defendant would take care of repair costs. Mr. Foreman testified that no representations were made at the time he signed the contract. Mr. Keane testified that he did not talk to Mrs. Foreman at all about the contract and that he was not present when the contract was signed by the Foremans.

If Mrs. Foreman at the time she signed the contract knew about the provisions which plaintiff is now seeking to add by reformation were not in the contract, plaintiff cannot properly contend that such provisions were omitted from the contract by mistake.

In any event, there is no substantial evidence to support a finding of any mistake on the part of the defendant as to the provisions of the written contract.

Plaintiff places considerable reliance upon the fact that defendant did honor some of its invoices for repairs and certain other expenses not specifically authorized by the written contract. Plaintiff claims that this constitutes clear and convincing evidence that plaintiff was to be paid for all costs incurred. We do not here have the situation involving the interpretation of an ambiguous contract, or an attempt to establish an oral contract, in which situations the practical construction of a contract between parties could be of some significance. Plaintiff here recognizes that the written contract which it signed bars its right to recover costs for which the contract makes no provision for compensation, and for that reason seeks reformation of the contract on the ground of mutual mistake.

We are convinced that the trial court committed no error in its determination that plaintiff has failed to establish mutual mistake by clear and convincing evidence. Such conclusion is decisive of this appeal. Consequently, we do not reach or consider the issue of whether plaintiff is barred or estopped from seeking reformation.

The judgment appealed from is affirmed.