## NATIONAL FIDELITY LIFE INS. CO. v. GERARD.

No. 25772.   Oct. 1, 1935.

Rehearing Denied Dec. 10, 1935.

Hatcher & Bond, for plaintiff in error.

Bailey & Hammerly and T. H. Williams, Jr., for defendant in error.

PER CURIAM. In March, 1929, the plaintiff in error issued to the defendant in error a policy of insurance under the terms of which it promised to pay the beneficiary in the event of death of the assured the sum of $12,000 in 120 equal monthly installments. The annual premium provided for was $557.52. Gerard was then 58 years of age. The policy as delivered provided for an old age annuity of $182.04 per month for life of the assured after he attained the age of 65 years, at the option of the assured.

It is clear from the evidence that the actuary of the company made a mistake in figuring the amount of the monthly payments, and placed the decimal point one point to the right of where it should have been, and the monthly payments should have been $18.20 instead of $182.04. However, before the policy was sold Gerard, a specimen policy was sent the state agent of the company and it was submitted to Gerard, and it provided for a monthly payment of $182.04 in the old age annuity clause. At least three other policies carrying the same annuity rates were sold in the vicinity of Chickasha, and some of them were sold on the strength of the Gerard policy. It was not shown that any policies carrying the old age annuity clause were sold in Oklahoma

220

carrying any different rates, or the correct rates.

In June, 1929, the company learned of the mistake and wrote to its state agent of the mistake, and asked him to pick this policy up, as well as two others, and send them in for correction, and to explain the mistakes to the policyholders. Gerard was not notified of the mistake, and there is no evidence that the state agent made any effort to pick up the policies.

In August, 1932, Gerard sent the policy to the home office to procure a premium loan and to have it endorsed on the policy. The company had the mistake corrected so as to make the annuity payment read $18.20 per month instead of $182.04, and returned the policy to Gerard without calling his attention to the correction. Gerard did not notice the change until April, 1933, when he wrote the company and demanded that the change be corrected so as to read as it was originally issued. The company refused to make the change, and Gerard filed this action to restore the policy as it was originally issued. The company filed an answer and cross-petition seeking reformation of the clause so as to make it read as it was changed.

The trial court entered judgment in favor of the plaintiff, Gerard, restoring the policy so as to provide an old age annuity of $182.04 per month, and from an order overruling motion for new trial the company appealed.

1. The company, for reversal, first contends that the old age annuity clause as originally written violates section 10512, O. S. 1931, in that it discriminated in favor of the plaintiff and against other persons of the same class and equal expectancy of life. Said statute provides:

"No life insurance company, association or corporation doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants (the insured) of the same class and equal expectation of life in the amount of payment of premium or rate charged for policies of insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contract it makes; nor shall any such company or agent thereof make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon."

The company relies on Metropolitan Life Insurance Co. v. Lillard, 118 Okla. 196, 248

P. 841, which construes this statute, and also on Western Union Life Insurance Co. v. Musgrave (Ariz.) 215 P. 536, which construes a statute similar to the above statute.

In the Lillard Case the company made a discrimination as to the right of the policyholder to elect between certain options for settlement where there was and was not a loan on the policy. This provision in the policy violated the plain terms of section 10524, O. S. 1931, that "no condition other than as herein provided shall be exacted as a prerequisite to any such loan."

In the Musgrave Case the agent writing the policy made a secret agreement with the policyholder that the company would make him a loan on certain land. This agreement was not contained in the policy and the officers of the company were not advised of it. The agent had no authority to make such contract, as only the board of directors cou'd make such a loan.

We think the cases cited by the company are not controlling in this case. Our statute does not provide that a policy issued in violation of the above statute shall be void, but it does make it a misdemeanor for any person to knowingly receive any valuable thing, special favor or advantage whatever (O. S. 1931, sec. 10513), and it makes a violation of any of the provisions of the article on insurance an offense punishable by fine (O. S. 1931, sec. 10532). There was no evidence introduced that tended to prove that the assured knew that the annuity payment was more than he was entitled to. The average citizen does not know how premium rates and payments to the beneficiary are arrived at. Those are matters that only a trained actuary can figure.

We think the rule applicable to the facts of this case was laid down by the Supreme Court of Texas in American Nat. Ins. Co. v. Tabor, 230 S. W. 397, where the court said:

"The rule is established that a court of equity will not withhold relief where it is necessary in the interest of justice and of sound public policy to enforce a contract which is inhibited by statute, but is not declared void and is not otherwise open to attack, provided the parties are not in pari delicto, and he who is least culpable seeks relief. I Pomeroy's Equity Jurisprudence (3d Ed.) sec. 403."

2. It is next urged that, irrespective of said statute against discrimination, it is inequitable not to grant the company relief

against the mistake. The company cites Berry v. Continental Life Insurance Co., 224 Mo. App. 1207, 33 S. W. (2d) 1016; N. Y. Life Insurance Co. v. Gilbert, 215 Mo. App. 201, 256 S. W. 148; Columbian National Life Insurance Co. v. Black, 35 F. (2d) 571; New England Mutual Life Insurance Co. v. Jones, 1 F. Supp. 984. To justify reformation of a contract on the ground of mistake, it must appear by clear and convincing evidence, either that the mistake is mutual or that there is a mistake on the part of one of the parties and fraud or inequitable conduct on the part of the other. 53 C. J. 941, 949; Newbern v. Gould, 162 Okla. 82, 19 P. (2d) 157; Rochelle v. Anderson, 113 Okla. 137, 243 P. 528. The trial court in effect held that the mistake was not mutual, and also that the assured was not guilty of fraud or inequitable conduct. We cannot say that such finding is against the clear weight of the evidence. If the assured had known that the annuity clause provided for ten times as much monthly payment as he was entitled to, and failed to call the attention of the company to that fact, such conduct would be inequitable and would entitle the company to reformation. This was the basis of the above decisions relied on by the company.

The policy had been in force more than three years at the time the company attempted to make the change, and it had accepted at least two premium payments after it discovered the mistake, without calling the attention of the assured to the mistake. It appears that the assured has, since said policy was issued, become afflicted with a heart ailment, and he cannot procure other insurance. The action of the company in making the change was without authority, and was of no effect, and it should not be placed in an advantageous position by such unauthorized act.

The lower court properly restored the policy and refused to reform the policy at the instance of the company.

Judgment affirmed.

The Supreme Court acknowledges the aid of District Judge Thurman S. Hurst, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by the court.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and CORN, JJ., concur.