## RKO DISTRIBUTING CORP v FILM CENTER REALTY CO

Ohio Appeals, 1st Dist, Hamilton Co

No 5021. Decided March 30, 1936

Ben L. Heidingsfeld, Cincinnati, Abraham Lipp, Cincinnati, and Ulmer, Berne & Gordon, Cleveland, for plaintiff in error.

Taft, Stettinius & Hollister, Cincinnati, and John H. More, Cincinnati, for defendant in error.

## OPINION

By MATTHEWS, J.

This action was begun in the Court of Common Pleas of Hamilton County and invoked the jurisdiction conferred by §12102-1, GC, upon any court of record "To declare rights, status and other legal relations whether or not further relief is or could be claimed," and giving to such declarations "the force and effect of a final judgment or decree." It has been brought into

this court on error by the plaintiff in the trial court. The parties will be identified in this opinion by their titles in that court.

The defendant owned a building in the city of Cincinnati, specially constructed for occupancy by distributors of moving picture films. The plaintiff and Columbia Pictures Corporation were lessees of different parts of that building, the plaintiff's lease running to February 1st, 1940, at an annual rental of $4620.00, and the lease of Columbia Pictures Corporation running to February 28th, 1940, at an annual rental of $2820.00.

On March 28th, 1932, a written agreement was entered into between the plaintiff and defendant which recited that the lessee and Columbia Pictures Corporation desired to exchange the premises respectively occupied by them, and that the defendant was agreeable thereto. To accomplish this exchange and in consideration of $1.00 and the covenants and promises contained in the agreement, the defendant accepted the surrender of the plaintiff's lease and each party was released from the obligations thereof. This provision was followed by the paragraph relating to the lease to the plaintiff of the premises occupied by Columbia Pictures Corporation in this language:

"The lessee or lessor will enter into and execute a new lease in the form attached hereto as Exhibit 'A which exhibit when executed and delivered by the parties hereto, shall constitute a new agreement between the parties."

In accordance with this agreement a lease identical in terms with "Exhibit A" was executed and delivered. This lease was prepared in New York City by the plaintiff's attorneys, executed there by the proper officers of the plaintiff and sent to Cincinnati, where it was executed by the defendant through its duly authorized officers. By its terms it purported to lease to the plaintiff the described premises theretofore occupied by Columbia Pictures Corporation for a term of seven years and nine months commencing on May 1st, 1932, and terminating on February 1st, 1940, and contained the usual covenant of the lessor that the lessee should quietly enjoy and the lessee agreed "That it will pay the rent agreed to be paid herein to the lessor at the time and in the manner herein specified." There are many additional provisions in this lease relating to the conduct of the parties. There are twelve typewritten pages. These pages are fastened to-

gether at the top by brads and are backed and top-lapped with a manuscript cover. On page eleven is found the usual attestation of authority of the corporation officials to execute the lease on behalf of their respective corporations followed by the signature of the corporate lessor and lessee by such officers. There are no attesting witnesses. There is space for signatures of witnesses, but no attestation clause or lines for signatures of witnesses. On the last page nothing appears save the certificates of acknowledgments of the Notaries Public.

The plaintiff entered into possession of these premises and paid rent according to the terms of the lease without any complaint until about the middle of 1934 when it approached the defendant concerning a reduction in the rental. Sometime during the discussion of the reduction of the rental the plaintiff raised the question of the conformity of the within lease to the requirements of §8510, GC, because of the absence of attesting witnesses, and certificates of the notaries not being, as was claimed, upon the same sheet on which the instrument was written.

Not being able to get a reduction in the rental, the plaintiff on January 16th, 1935 notified the defendant that it considered the term would end on April 30th, 1935, and that it intended to vacate the premises on that date. The defendant replied that it would hold the plaintiff to the obligation of the lease and would not accept a surrender. The defendant at that time notified the plaintiff of its readiness and willingness to execute a new lease in order to carry out fully the agreement of March 28th, 1932, if the lease already executed should be deemed insufficient in form, and demanded that the plaintiff take like steps to perform said agreement. Nothing was done by the plaintiff in response to this and on January 17th, 1935, this action was instituted. The plaintiff vacated the premises prior to May 1st, 1935, and they have remained unused since then.

In its petition the plaintiff alleged the facts relating to the written lease to show its non-compliance with §8510, GC, and prayed for a declaration that it created a tenancy from year to year and that it might terminate its liability as to "said lease as of the 30th day of April, 1935, or as of the 30th day of April of any subsequent year by vacating said premises."

The defendant by its answer admitted the facts relating to the lease dated March 28th, 1932, but denied the legal conclusion that it had the effect of creating a ten-

ancy from year to year only, and then proceeded to set forth the agreement between the parties of March 28th, 1932, providing for the surrender of the premises then under lease to the plaintiff and the execution and delivery of the lease dated March 28th, 1932 for the other space referred to in the plaintiff's petition. A copy of that agreement was attached to the answer. The defendant also alleged that the plaintiff prepared the lease and, that after the defendant had executed it, it returned it to the plaintiff, that plaintiff entered into and retained possession without questioning that it created a tenancy for 7 years and 9 months until the autumn of 1934. The defendant further alleged that it was ready and willing and had offered in all respects to carry out the agreement of February 28th, 1932, and prayed that the court declare the lease to be a valid lease according to its terms, or in the alternative, either that the court declare that the defendant has the right to require the plaintiff to enter into a binding lease for the period up to February 1st, 1940, in the form and containing the terms and conditions set forth in the exhibit to said agreement, or that the court grant to its specific performance of the agreement of March 28th, 1932, binding the parties to execute and deliver such a lease.

The reply admitted the allegations of the answer relating to the agreement of March 28th, 1932, binding the parties to execute and deliver the written lease.

The secretary of the defendant, who was the attorney representing it in this transaction, testified that the failure to have attesting witnesses and the certificate of acknowledgment on the same page with some other part of the lease was unintentional and the result of an oversight induced in part, at least, by the form in which the plaintiff had prepared the lease.

The trial court entered a judgment declaring that the lease of March 28th, 1932, was not executed in conformity to §8510, GC, and that it created a tenancy from year to year only, but that the agreement of March 28th, 1932, was a valid and subsisting contract which the defendant was entitled to have specifically enforced and then proceeded to decree specific performance of it and assessing the costs of the action against the plaintiff.

The plaintiff excepted to that part of the judgment relating to the agreement and the judgment thereon.

The plaintiff prosecuted error. The defendant filed no cross-petition in error. It is suggested by the plaintiff that the inquiry here must be limited to a consideration of the findings of the court with reference to that part of the judgment excepted to by it, and that if that be found erroneous the judgment must be reversed.

It is sufficient to say in this connection that this proceeding brings under review the entire judgment and "if the judgment is right for any reason it is the duty of the reviewing court to affirm it." 2 **Ohio Jur.** 1155. This principle is especially applicable to a declaratory judgment under §12102-1, **GC**, in which the "right, status and legal relations" cannot be made to depend upon the decision of juristic significance of an isolated circumstance, but must be determined by the application of every principle of law and equity to the composite of all the facts affecting such "rights, status and legal relations" of the parties. The plaintiff does not dispute that the trial court should have considered all the facts, but assert that this court cannot do so on the state of the record. The declaration of rights is to have the finality of a judgment and manifestly it would be unjust to predicate it upon anything less than the whole case. If the declaration is predicated on less than the whole facts, it would and should be no more than an academic opinion on an abstract question, whereas, it is intended to permanently fix the rights of the parties. This position is fortified by a consideration of §12102-6, **GC**, which empowers the court to refuse to enter a declaratory judgment where it would not remove "the uncertainty or controversy giving rise to the proceeding." A declaration that there was a technical defect in the leases without more would decide no question of right. It would decide a mere academic difference of opinion.

It was incumbent for the court to proceed as it did, to consider all the other facts developed by the pleadings and proof.

By answer alleging additional facts, the defendant brought before the court issues affecting "the rights, status and legal relations" of the parties, other than the issue of whether §8510, **GC**, had been complied with. These additional issues invoke the power of the court to correct defects so as to carry out the manifest intention of the parties, to reform instruments to conform to such intention, and to grant specific performance of contracts.

It was and is the claim of the plaintiff that the lease of March 28th, 1932 fails to comply with the provisions of §8510, **GC**, because there are no attesting witnesses

thereon, and also because the certificate of acknowledgment is not "on the same sheet on which the instrument is written or printed." It is admitted that the lease is defective in the first respect. The same legal consequence follows as completeiy as it would if the instrument should be found defective in more than one respect. It would seem unnecessary, therefore, to consider whether the certificate of acknowledgment is on the same sheet, under the rule stated in the decisions, particularly **Rollman & Sons Co. v Alaska Realty Co., 4 Ohio Opinions, 386.** The question is moot in this case. The court was clearly right in declaring the lease ineffective as a conveyance under §8510, GC.

As we construe the judgment of the trial court it declares only that this defectively executed lease coupled with possession created at law a tenancy from year to year. It makes no declaration of the extent of its utility, if any, in a court of equity. §8510, GC, prescribes the requirements of a written document intended to convey a leasehold interest in land. This document, not conforming to those requirements could have no effect as a lease. The judgment of the trial court, therefore, declared that possession taken thereunder did not have the effect of creating a leasehold estate for 7 years and 9 months according to the terms of the document, but that the possession and payment of rent took it out of the statute of frauds and created an estate for successive periods at the rental agreed upon by the parties, and that the defectively executed lease could be used as evidence of such intention. Had there been no writing at all, taking possession would have had that effect. **Wilber v Paine, 1 Ohio, 248, at 256; Waggoner v Speck, 3 Ohio, 293 at 294; Grant v Ramsey, 7 Oh St, 158 at 161; and LeBounty v Brumback, 126 Oh St, 96.** And specific performance would be decreed of the oral contract supplemented by such part performance, no matter how great the interest in the land might be. Id.

If the court had stopped with this declaration of the effect at law of this defectively executed instrument, it would not have given effect to all the facts before it, nor the full legal and equitable consequences of the facts already considered. It would not have determined whether the document defectively executed for the purpose of a conveyance could be considered as a contract and specifically enforced in the exercise of equity jurisdiction. Nor would it have considered the effect upon the rights of the parties of the prior written agreement which both parties had attempted in good faith to perform by the execution and delivery of the lease. And not having done so, it would not have exercised the jurisdiction conferred upon it to "declare rights, status and legal relations."

It was incumbent upon the court to proceed as it did to determine all the facts from the admissions and evidence dence and apply not only rules of law but also equitable principles in reaching a conclusion as to the rights of the parties.

A determination of the facts was a simple task. Two written documents signed by both parties attested the defendant's intention to give to the plaintiff the right to occupy the premises for seven years and nine months in consideration of its promise to pay a certain sum per year. There is no uncertainty about the intention of the parties to contract and no ambiguity in the terms by which they have expressed their intention.

But the plaintiff argues that the defectively executed lease is not available as evidence of the contract and many cases are cited. We do not consider that these cases support plaintiff's position. **Richardson v Bates, 8 Oh St, 257,** was an action to recover rent and nothing more. The court pointed this out at page 264 saying: "The record shows that the plaintiff, by his petition, predicated his right to recover solely upon the indenture set forth in his petition. He did not aver a part performance, and ask to have the instrument reformed and then enforced." It is manifest that the court did not consider, much less decide, what the rights of the parties were in equity. In **Hout v Hout, 20 Oh St, 119,** the court simply held that an unacknowledged instrument was not a deed, and when it was not supported by a valuable consideration it could have no binding effect as a contract. **Railroad Co. v West, 57 Oh St, 161,** decided that entry into possession under a void lease for a term of years and payment of rent created a tenancy from year to year, which bound the tenant to pay the rent for the full current year, created by holding over, for which the action was brought. Nothing else was considered, because nothing else was involved. It appears in the record in the case of **The Toussiant Shooting Club v Schwartz, 84 Oh St, 440,** that at the time the Supreme Court made its journal entry, (no opinion having been handed down) that the defendants in error were not in possession and had no writing signed by any owner that would

give them any right in the property the term provided having expired. It would seem, therefore, that the judgment was correct even though the conclusion of law might be construed to be broader than the necessities of the case required.

The ratio decedendi of **Adams v Connelly et, 10 Abs 121**, is found in the fact that the defective lease contained the provision that the lease should be for two years "with the privilege of continuing this from year to year, unless property should be sold, then party of second part shall have the privilege to purchase said plot of ground for $100.00," and that the plaintiff sought to have the court construe this provision as one for a perpetual lease and specifically enforce it as such. The court construed the terms of the lease as only providing for a lease for a definite term of two years, and thereafter from year to year, determinable at the option of either party, and not enduring perpetually. The court reached that conclusion by applying the rule that perpetual renewals or continuances are not favored and must be clearly expressed. 24 Ohio Jur. 1239; 16 R.C.L. 887; Vokins v McGaughey, 39 A.L.R. (Ky.) 275.

**The Rex Amusement Co. v Nolan, 11 Oh Ap, 318**, did not involve the application of equitable principles. Neither party asked for equitable relief.

While it is true that in the case of **Fried v Cohn-Goodman, 28 Ohio Law Reporter, 91 (7 Abs 713)**, the court refused reformation and specific performance as reformed of a defectively executed lease at the instance of the lessor, it is equally true that the decision was placed squarely on the ground that there was an adequate remedy at law for damages for breach of the contract to pay rent evidenced by the defectively executed lease document. At page 96, the court said:

"But does that necessarily dispose of his rights in this case? We think not. We think the plaintiff has a complete remedy at law, and that is (not to collect the rents from the defendant as a tenant, because if the decisions that we cite be the law, and undoubtedly they are, this defendant. has ceased to be a tenant and, therefore, would not owe any rents) but to bring an action for damages, for an action to collect the rents is not the only action that might be brought. An examination of this writing that has been signed by both parties, by the plaintiff and by the defendant, shows that it makes a complete contract. It provides for the term when the defendant shall occupy this property and provides

for the amount of rent that he shall pay and it has all the terms of a completed lease in it, and it is signed by both parties. Now while this may not be sufficient, and under the authorities cited, we unhesitatingly say that it is not sufficient, as a lease, we just as unhesitatingly say that it is a valid contract made between the parties who are competent to make contracts, and it is signed not only by the party to be charged, to-wit, the defendant in this action, but by the plaintiff as well and is, therefore, a complete memorandum upon which an action for breach of contract may be predicated."

Certainly, in a declaratory judgment action if the lessor has rights based on the defectively executed lease document, those rights should be declared whether those rights are recognized in law or in equity.

In **The Lithograph Bldg. Co. v Watt, 96 Oh St, 74**, the court while refusing relief because the agent had no authority to bind his principal, specifically recognized that rights are created by a defectively executed lease. In the syllabus it is stated that:

"A lease, defectively executed, will in equity be treated as a contract to make a lease."

We think, therefore, that the cases relied on by the plaintiff either support the defendant's position or are clearly distinguishable. Other cases supporting the defendant's contention are: **Schloss v Brown, 12 Oh Ap, 294; Newstedt v Scarborough, 12 O. D. (N.P.) 327; Abbott v Bosworth, 36 Oh St, 605; Pero v Miller, 32 Oh Ap, 174 (6 Abs 731)**.

So we conclude that had the contract between these parties been evidenced by no other writing than the defectively executed lease it would have been ██ binding and enforceable and would have created rights in favor of the lessor for damages for breach of contract or specific performance, which the court would have been required to declare in this form of action.

These same rights and duties were evidenced by a properly executed written agreement binding the parties to the execution of this lease. But the plaintiff says that it has done all that it was required to do by that agreement which by its terms required of it only the execution of the document attached in the manner prescribed and that when executed constituted a new agreement between the parties. And the plaintiff says that under the

law the lessee's signature is not required to be acknowledged before witnesses or notary and, that, therefore, it has fully performed all conventional and legal obligations imposed upon it in respect to the execution of the lease. The trial court reached the conclusion that the parties intended that the lease should be executed in such a way as to give it full legal effect, and in this conclusion we concur, and if it failed to conform to the intention of the parties through inadvertence, such as through either mistake of fact or law, equity would reform it to make it conform. However, if the agreement was, as contended, that the lease document should be so executed as not to comply with §8510, GC, then the defendant has fully performed, and as the plaintiff was given possession of the premises and permitted to occupy them without let or hindrance, there could be no basis for relieving it from the obligations assumed by it to pay damages for breach of its contract to pay rent. But we are of the opinion that the plaintiff could require the defendant to specifically perform and that as the remedy must be mutual, a decree requiring it to do so and also requiring the plaintiff to accept the lease properly executed would be a substantial declaration of their rights, and, even if erroneous, would not be prejudicial to the plaintiff as the liability under the defectively executed lease is the same as that under a lease executed in accordance with the statute.

The court is also of the opinion that the same result is reached by the exercise of jurisdiction conferred upon the court by §12210, GC, to carry into effect the intent of the parties by curing defects.

The question of whether the court should grant coercive relief on the declaration of rights is not presented, no action having been made on that ground, and no prejudice would result because the right having been declared the statute authorizes an immediate action thereon in which the finding could not be controverted. We, therefore, express no opinion on that subject.

We find no error, prejudicial to the plaintiff in error, and the judgment is, therefore, affirmed.

ROSS, PJ, and HAMILTON, J, concur.