MAE GROVER BALES et al., appellants, v. STATE AUTOMOBILE INSURANCE ASSOCIATION, appellee.

No. 49147.

(Reported in 81 N.W.2d 474)

MARCH 5, 1957.

Life & Davis, of Oskaloosa, H. E. De Reus, of Knoxville, and J. Leo Martin, of Sigourney, for appellants.

488

James L. Devitt, of Oskaloosa, for appellee.

OLIVER, J.—Plaintiffs brought suit to reform and recover upon a farm liability insurance policy, covering, in part, bodily injuries to exchange laborers, on the ground of mistake in limiting such coverage to damages which insured should become legally obligated to pay. Trial resulted in judgment denying reformation and this appeal by plaintiffs.

Defendant, insurance company, issued the policy August 4, 1952. The named insured are Mae Grover Bales and her sons, Francis H. Grover and Albert E. Grover. These, with the injured person, Amos Adams, are named plaintiffs in the suit. However, sometime before the policy issued Mae Grover Bales had died; Albert had left the farm and Francis H. Grover was operating it individually. He paid the premium on the policy. The provisions of the policy were substantially the same as those of prior policies which had been issued to Mrs. Bales and her sons each previous year, beginning with 1945.

Plaintiff Amos Adams was not named in the policy. He was a neighboring farmer who performed exchange labor for Francis Grover on the insured farm. In September 1952, while operating his own tractor and corn picker in such capacity, he suffered the accidental loss of his left hand. He does not contend Francis is legally liable to him on account of such injury.

A clause in the policy provides for medical payments, not exceeding $300, to or for each member of the public, employee or exchange laborer, accidentally injured while on the premises, etc. Defendant has never disputed its liability, under this clause. Its tender of $300 was refused and defendant deposited that amount with the clerk subject to the order of district court.

The Insuring Agreements of the policy recite, in part, that the insurer agrees:

"1. Coverage A.—Liability—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"(1) Bodily Injury—Public. * * * (Limits $5,000 each person, $10,000 each occurrence).

"(2) Property Damage. * * * ($5,000 each occurrence).

"(3) Bodily Injury—Employees. Bodily injury, sickness or disease * * * sustained by any exchange laborer." (Limits of liability, $5,000 each person, $10,000 each occurrence.)

The petition alleges Mrs. Bales, Francis and Albert purchased the policy of insurance relying upon the representation of defendant's agent, G. Lyle Kramer, made about August 4, 1952, that defendant would be liable thereunder, up to $5,000 for accidental bodily injury sustained by an employee or exchange laborer on the farm; that due to error, neglect, oversight, mistake or inadvertence of defendant's agent, in preparing the policy, it does not set out the true intention of the parties, and is not in accord with such representation in that it limits payments for such bodily injuries to such sums as the insured, "may be legally obligated to pay as damage" therefor; "that due to mutual mistake said policy does not set out the true intent of the parties thereto." Plaintiffs pray that it be reformed accordingly, for judgment for plaintiff Adams for $5300 and for general equitable relief. The single ground pleaded for reformation is mutual mistake. Fraud is not charged.

The evidence is in conflict. Francis Grover testified that before the 1952 insurance policy was delivered to him he had a conversation with defendant's agent Kramer concerning the taking of insurance and the policy, and Kramer "said that it would cover any injury that occurred on my farm * * * to parties that I would hire for exchange work to the extent of $5,000 for bodily injury * * *. He told me the coverage was $5,000 for any bodily injury any worker or exchange laborer would receive while working on my property, my farm ground." Francis testified he knew it was a farm liability policy but did not know his "liability had to be established" before payment by the insurer. Kramer denied having made any such statements and testified he had no recollection of any conversation with Francis Grover immediately prior to the issuance of the 1952 policy.

The rule is well settled that to justify reformation of an insurance policy, or other written contract, on the ground of mutual mistake, the proof thereof must be clear, satisfactory and convincing. Wall v. Mutual Life Ins. Co., 228 Iowa 119, 127, 289 N.W. 901, 904, and citations; King v. Good, 205 Iowa

1203, 1207, 1208, 219 N.W. 517; National Reserve Ins. Co. of Illinois v. Scudder, 9 Cir., Cal., 71 F.2d 884, 886; 76 C. J. S., Reformation of Instruments, section 30.

The trial court held the proof in this case was not of that quality. We agree with that conclusion. Certain circumstances militate against the testimony of Francis Grover that in 1952 Kramer told him about the policy and asked him to buy it, and that they talked about it. One is that this was not, in reality, a new policy which would ordinarily require explanation and persuasion. It was, in effect, merely the annual renewal of the policy which had been carried for some years. Moreover, had any such conversation taken place, it is probable Francis would have advised Kramer of the death of his mother and the withdrawal of his brother, and the 1952 policy would have named him (Francis) as the sole insured.

Again, Francis and Kramer knew this was a liability policy. Kramer, who is not charged with fraud, knew, and Francis should have known, that any liability of the insurer under such a policy would be measured by that of the insured, within the limits of the policy. The policy envisioned by the testimony of Francis would include accident insurance for the benefit of employees and exchange laborers, with the amount of liability, within the limits of the policy, ascertainable by legal proceedings. A policy containing such provisions would be unusual.

The evidence of mistake in this case is not comparable to that in decisions of this court relied upon by plaintiffs. Den Hartog v. Home Mutual Ins. Assn., 197 Iowa 143, 146, 196 N.W. 944; Quinn v. Mutual Benefit Health & Acc. Assn., 244 Iowa 6, 12, 55 N.W.2d 546; Lankhorst v. Union Fire Ins. Co., 236 Iowa 838, 20 N.W.2d 14; Prudential Ins. Co. v. Lawnsdail, 235 Iowa 125, 15 N.W.2d 880. None of them questions the rule that the proof of mistake in such cases must be clear, satisfactory and convincing and some of them expressly recognize it. In the language of the distinguished trial court, "The record made in the instant case falls far short of such standard."—Affirmed.

All JUSTICES concur.