JOHN W. BALDWIN, appellant, v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, appellee.

No. 50250.

(Reported in 108 N.W.2d 66)

640

MARCH 7, 1961.

Guthrie & Blackburn, of Webster City, for appellant.

Henry & Henry, of Des Moines, for appellee.

LARSON, J.—This is an action for declaratory judgment by John W. Baldwin, plaintiff-appellant, against the Equitable Life Assurance Society of the United States, defendant-appellee. The purpose of the action was to determine plaintiff's rights and obligations under a policy of insurance issued to him by defendant on April 22, 1936. Defendant's cross-petition asked reformation of the policy to correct what it referred to as a mutual mistake of the parties, and both parties prayed for general equitable relief. The matter was tried as in equity. Plaintiff contended the policy purchased and delivered to him was a twenty-payment life policy, now fully paid, and prayed

judgment to that effect and for the sums paid defendant as premiums since 1956. It was defendant's contention that by mutual mistake the policy was issued upon a twenty-payment life form instead of an ordinary life form, which provided the correct premium for an ordinary life policy, but not the correct premium for a twenty-payment life policy. Obviously a mistake occurred, but what it was and who made the mistake is at issue.

The trial court found the policy intended by the parties was a twenty-payment life policy, but due to a mutual mistake the premium required was incorrectly stated in the policy, reformed the instrument to provide the correct premium, and established plaintiff's liability to defendant for the deficiencies in premiums, with interest at 5% per annum from the respective due dates, less the premiums paid from 1956 to date. Plaintiff appeals.

Although defendant did not appeal, it contends that under the pleadings and relief prayed we should in this suit reform the instrument to comply with the real intention of the parties, which it says was an ordinary life policy, but if that relief were not granted, then the trial court's determination of the real contractual intention and the legal rights of the parties should be upheld, for under the evidence there was clearly a mutual mistake as to the premium charged and collected for the twenty-payment life policy purchased. Plaintiff argues the error, if it was an error, was solely that of the defendant and maintains that under the law such a purely unilateral mistake will not justify a reformation of the insurance contract.

I. The law seems well settled in all jurisdictions that a court of equity will reform an insurance contract where the contracting parties make a mistake and the policy fails to express the real agreement between them. Quinn v. Mutual Benefit H. and Acc. Assn., 244 Iowa 6, 13, 55 N.W.2d 546, and citations; Allemang v. White, 230 Iowa 526, 530, 298 N.W. 658, and citations; Stoltz v. National Indemnity Co., 345 Ill. App. 495, 104 N.E.2d 320; Hibbard v. North American Life Ins. Co., 192 Wis. 315, 212 N.W. 779; Buck v. Equitable Life Assurance Society, 96 Wash. 683, 165 P. 878; Columbian National Life Ins. Co. v. Black, 10 Cir., 35 F.2d 571, 71 A. L. R. 128; Metropolitan Life Ins. Co. v. Henriksen, 6 Ill. App.2d 127, 126 N.E.2d

736, 740; 76 C. J. S., Reformation of Instruments, section 30; 29 Am. Jur., Insurance, section 338. Reformation does not mean changing the agreement, but refers to a change in the drafted instrument to conform to the real agreement. It is stated in the latter citation, "the court does not change the terms of the contract made by the parties; it merely declares what those terms were, that is, it makes the writing express the real agreement or intention of the parties." As a court of equity, we seek from the evidence the real agreement or intention of the parties. Each such case must then rest largely upon its own facts.

Much of the relevant evidence here is undisputed. When defendant's agent B. H. Cottingham called upon plaintiff and his wife in April 1936, plaintiff, a meatcutter in a market at Ames, Iowa, then 27 years of age, applied for a $1000 ordinary life insurance policy with double indemnity for accidental death. The agent prepared the application, plaintiff signed it and paid the first premium of $23.70.

Plaintiff and his wife both testified that Cottingham then attempted to interest plaintiff in a twenty-payment life policy, and its features were discussed. However, due to financial commitments in the spring months, plaintiff demurred. The agent then suggested that another $1000 policy be sent out on approval, with the annual premium coming due in the month of October. Mr. Cottingham, testifying by deposition, did not recall this conversation, but according to his recollection and his books the second policy, the one here involved, was another $1000 ordinary life policy with annual premiums to be due in the fall. Thus, the first factual problem before the court was as to the type of policy involved. Plaintiff and his wife were quite positive the agent "talked" a twenty-payment life policy, and especially recalled that it would be paid up in a shorter time as one of its features. They declared Cottingham was to ask that "a twenty-year pay" policy be sent out for their "approval."

A second application was not filled out. One application was used for both policies. This failure to fill out a second application possibly accounts for all the misunderstandings or mistakes that followed.

When the policy involved herein arrived a month or so after the agent had delivered the first one, it was on the twenty-payment life form, showing the premium of $23.70 per annum rather than $34.54, which was the correct amount for such a coverage. In every other aspect it was a regular twenty-payment life policy, including extended coverage and the usual table of loan and surrender values. These amounts, of course, were over twice those appearing on the ordinary life policy plaintiff had just received a short time before.

The plaintiff's wife testified that the agent "brought the policy to us and explained that it was a twenty-year policy and that the company had made us a very good rate on it" and the plaintiff said he "recommended that it was a very good rate and that we accept this policy." They did accept it. Both testified they did not notice or pay any attention to the fact that the premiums were the same as for the ordinary life policy, or note the other differences, but that the policy was put away with their valuable papers and thereafter plaintiff simply paid the premiums as the notices were received from the company. It was not until Mrs. Baldwin was examining their papers in 1958 that she discovered the twenty payments required by the policy had been paid. The defendant was promptly notified, and for the first time it discovered that a mistake had been made. Although many years had passed, it took the position that the contract between the parties was, in fact, an ordinary life contract and demanded that plaintiff continue to pay the premiums accordingly. Plaintiff continued to pay them in order to avoid a lapse and instituted this action to determine his rights under the policy.

II. Perhaps we should first dispose of defendant's contention that as a matter of fact the policy in question was an ordinary life agreement exactly like the first one plaintiff purchased. The trial court heard and observed the witnesses. Under such circumstances we of course give weight to the findings of fact by the trial court, even though the review be de novo. There is ample evidence to support its finding that the policy intended was a twenty-payment life policy, and we are satisfied that such was the real intention of both parties. As

to the matter of a mistake by one or both parties relative to the terms and conditions of the written policy when delivered, we shall have more to say later, but as to the type of policy involved, we hold the trial court was correct.

III. As with contracts generally, the cardinal principle in the construction of insurance contracts is that the intention of the parties should control. Sands v. Iowa Mutual Ins. Co., 244 Iowa 16, 19, 55 N.W.2d 572; Iowa Electric Co. v. Home Ins. Co., 235 Iowa 672, 677, 678, 17 N.W.2d 414, 417, and citations. It is also true generally that when two different interpretations of an insurance agreement are possible, the one most favorable to the insured is preferred. Iowa Electric Co. v. Home Ins. Co., supra, and citations; Struble v. Square Deal Ins. Co., 237 Iowa 1155, 1159, 24 N.W.2d 441, 442. Furthermore, it is well established that one who contends for reformation of an insurance policy or other written contract, on the ground of mutual mistake, must show by clear, satisfactory and convincing evidence the true agreement of the parties. Bales v. State Automobile Ins. Assn., 248 Iowa 487, 489, 81 N.W.2d 474; Wall v. Mutual Life Ins. Co., 228 Iowa 119, 127, 289 N.W. 901, 904, and citations; King v. Good, 205 Iowa 1203, 1207, 219 N.W. 517; Columbian National Life Ins. Co. v. Black, 10 Cir., 35 F.2d 571, 71 A. L. R. 128, 133, and many citations.

However, there is another rule worthy of note, and recognized by respectable authority, to the effect that in reformation matters involving insurance contracts, less actual proof is required than in contract cases generally. 29 Am. Jur., Insurance, section 338, page 702; Center Street Fuel Co. v. Hanover Fire Ins. Co., 272 Wis. 370, 75 N.W.2d 462. We ourselves have often used the rule in behalf of an insured, but if it be a sound rule, it should be equally applicable to insured and insurer. Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 106 N.W.2d 86, and citations therein.

Was the evidence sufficiently clear, satisfactory and convincing of a mutual mistake to permit a court of equity to grant reformation? The trial court thought so and we agree. By plaintiff's own testimony, the agent explained to him the difference between twenty-payment life and ordinary life in-

surance. It was plaintiff's understanding that the agent was to order a twenty-payment life policy on approval. When the policy arrived, it was such a policy. While both plaintiff and Mrs. Baldwin did not remember any comparisons being made between premiums on the two policies, it is not reasonable to believe that feature was not discussed. It is not claimed the coverage was special or unusual. Although plaintiff maintains the agent told him on delivery of the policy "that it was a very good rate", such expression was no more than shop talk and did not infer a bargain rate or special rate to the prospective buyer. It is more probable that neither the agent nor the insured noticed the mistake in premium designation, but assumed it was the rate quoted when the policy was ordered out on approval. That, we think, is the most reasonable inference and, if so, both parties were mistaken in believing the drafted instrument evidenced the true and real agreement, i.e., to insure plaintiff under the standard and usual rate for a twenty-payment life policy.

The life insurance business is so well established and controlled that the general public is or should be well aware of the differences between ordinary life contracts offered them by insurance companies and certain term payment life policies. A person would be suspect and not normal if, after discussing the differences with an agent, he would not be aware that a life policy requiring only twenty payments would require a larger premium than one where premiums were to be paid until death. We do not believe the plaintiff or his wife is in that class. He was therefore charged, as a reasonable ordinary person, with knowledge of that fact, and when the twenty-payment life contract did not show a larger premium than his ordinary life premium at the same age it was a mistake that he did or did not notice. If he did not notice it, the mistake was mutual. If he did notice the amount and said nothing, being under the false impression it was the correct one for such policy, the mistake was mutual, but if he noticed it and did not then call the company's attention to it, he was guilty of inequitable conduct. In any of these cases a court of equity should, unless for some other compelling reason, reform the contract to include the proper premium for the class of insurance involved.

Here the trial court found that in a legal sense there was a mutual mistake because the premium appearing on the face of the policy was not the one contemplated by the parties when the policy was ordered out. This basic issue in the case is one upon which we have not heretofore passed. It has caused considerable trouble in other jurisdictions, and some courts take the view that, as to regular and ordinary policies, clerical errors should be corrected and the policy reformed, on the ground that the insured did not reasonably contemplate or understand he would be given special treatment as to premiums or benefits. Thus he became a party to such a mistake, which made it mutual. Schmidt v. Prudential Ins. Co., 235 Wis. 503, 513, 292 N.W. 447, 451; Neary v. General American Life Ins. Co. 140 Neb. 756, 1 N.W.2d 908, and citations; Columbian National Life Ins. Co. v. Black, supra, 35 F.2d 571, 71 A. L. R. 128; Berry v. Continental Life Ins. Co., 224 Mo. App. 1207, 33 S.W.2d 1016; Hibbard v. North American Life Ins. Co., 192 Wis. 315, 212 N.W. 779. In the Schmidt case, supra, the court stated: " 'It may be safely asserted that both parties contemplated a contract not substantially out of harmony with the rates and terms that prevailed among like or similar insurance companies.' "

On the other hand there are jurisdictions, such as Texas and Oklahoma, where the courts seem to hold the companies to their written contract although out of harmony with the rates usual and proper for that type of policy. In National Fidelity Life Ins. Co. v. Gerard, 175 Okla. 219, 52 P.2d 1, 3, the court refused to reform the written contract when by a clerical error an annuity payment of $182.04 per month was inserted instead of $18.20, calling it solely the mistake of the insurer; not mutual. Likewise, in Reserve Life Ins. Co. v. Goodloe, Tex. Civ. App., 316 S.W.2d 443, 446, the court refused to reform a policy contract showing erroneous amounts under cash value payable at the end of fifteen years. The court there said: "The most that can be said is that someone in defendant Insurance Company's organization made a mistake. There is no showing whatsoever that the mistake was mutual or shared in in any wise by plaintiff or his father. In fact it is more logical to believe that the mistake made by the Insurance Company was in not charging

enough premium than to believe the mistake was in endowing the policy in 8 years rather than in 20 years." It is true this latter case seemed to involve a special, not a regular, insurance contract or policy, and if it did involve a prior agreement or understanding, it was the one evidenced by the instrument itself.

There are a host of other jurisdictions where obvious errors appeared in the written policies, errors that were so evident that the insured could not reasonably claim ignorance of them. In Metropolitan Life Ins. Co. v. Henriksen, 6 Ill. App.2d 127, 126 N.E.2d 736, the court said that if the insured noticed the error in a $1000 life policy giving insured an option at the end of twenty years to receive an annuity of $1051 per year rather than $10.51, and said nothing to the insurer about the error, insured was guilty of such inequitable conduct as to amount to fraud, and if not, the error was mutual and the policy should be reformed. Also see Donnelly v. Northwestern Life Ins. Co., 5 Cir., 59 F.2d 46, 287 U. S. 638, 53 S. Ct. 87, 77 L. Ed. 553; Hemphill v. New York Life Ins. Co., 195 Ky. 783, 243 S.W. 1040; Berry v. Continental Life Ins. Co., supra, 224 Mo. App. 1207, 33 S.W.2d 1016; and New York Life Ins. Co. v. Dickensheets, 165 Kan. 159, 193 P.2d 649.

IV.  We are satisfied the better rule in these matters is that where the evident mistake is shown to be in the drafting and not in the making of the contract which it evidences, the court may grant reformation and, in equitable circumstance, should do so. In our search for the real agreement as to the terms of the insurance contract involved, we should consider the circumstances leading to consummation as well as general public knowledge of such class of contracts. The general rule, of course, is well established that if by mutual mistake of the parties, or through mistake on the part of one, and fraud or inequitable conduct on the part of the other, the written instrument drafted to evidence the contract fails to express the real agreement and intention of the parties, a court of equity may grant reformation. Williams v. Hamilton, 104 Iowa 423, 73 N.W. 1029, 65 Am. St. Rep. 475; Bales v. State Automobile Ins. Assn., 248 Iowa 487, 81 N.W.2d 474; Hayes v. Travelers Ins. Co., 10 Cir., 93 F.2d 568, 125 A. L. R. 1053; Columbian

National Life Ins. Co. v. Black, supra, 35 F.2d 571, 71 A. L. R. 128; 76 C. J. S., Reformation of Instruments, sections 29, 30; Restatement of Contracts, sections 500, 503, 504; 29 Am. Jur., Insurance, section 340, page 704. Mutual mistake, as generally used in these matters, relates to a mistake common to all parties to a written contract or instrument, and usually refers to a mistake concerning the contents or the legal effect of the contract or instrument.

As usual in such cases, plaintiff here denied any mistake on his part or any knowledge of a mistake on the part of defendant. However, he does admit he discussed the advisability of obtaining such a contract with the agent, and it is a fair inference that he was fully advised as to its provisions and costs before he consented to have it sent to him on approval. In making the selection he must have been aware of the principal differences between an ordinary life policy and a twenty-payment life policy. It is not reasonable to believe under these circumstances that he did not know that the premiums would be higher in the twenty-payment life contract or that he was not advised of that fact. It is true he was not a person well versed in insurance matters, but he knew the type of policy he wanted, and noticed that it was of that nature.

Furthermore, it is generally understood that as to the ordinary and usual types of policies offered the public, there is no substantial difference in the provisions, benefits or costs for like classes of policies between companies. These contracts are of necessity submitted to the State Commissioner of Insurance for approval before they are offered to the public. Wide variances would not be approved, for they are all figured on carefully calculated mortality tables. Courts as well as individuals should take notice of these facts. Therefore, there is merit in the position that less should be required to prove actual knowledge of a mistake as to premium or benefits in the standard contract than in contracts generally, or in the case of a special or unusual insurance agreement.

It has been said that as to insurance agreements there are no bargains. Contracts in violation of that rule have been classified as against public policy, and most states, including ours, have antidiscrimination statutes to prevent such practices.

True, the contract here was sent plaintiff on approval, but as it was not a special or unusual type of coverage which required a special rate to be figured by the defendant, he knew or should have known of the mistake when he examined and accepted the policy. In Columbian National Life Ins. Co. v. Black, supra, the court said at page 574 of 35 F.2d, page 133 of 71 A. L. R., by way of illustration: "A man presents a check for $100 to a bank teller; he gets two $100 bills. No matter how loudly he asserts the lack of mistake on his part, the fact still remains that he was either mistaken or was trying to benefit by the teller's mistake."

We must conclude, under the facts and permissible inferences, the mistake was a mutual mistake and that justice and equity require that the policy agreement be reformed.

V. In its conclusions of law the trial court referred to the provisions of section 8666 of the Iowa Code, 1935, which provided: "No life * * * insurance company * * * shall make or permit any distinction or discrimination between persons insured of the same class and equal expectancy of life in the amount or payment of premiums or rates charged for policies of life * * * insurance, or in the dividends or other benefits payable thereon, or in any other of the terms or conditions of the contract it makes * * *." This statute now appears as section 507B.4(7), Code of Iowa, 1958. The trial court said as a result of these statutes it was not competent for defendant to charge the premium that it did, and that it was required by law to charge at the regular twenty-payment rate. As the court did not void the policy, defendant contends the reference was not a conclusion of law but related only to a presumption that the parties did not intend an illegal act. We agree with that contention. There was no evidence of any agreement or understanding between the parties that plaintiff would receive a special rate for his insurance, different from that of anyone else. Quite the contrary, we think, except for the mistake which we have found was mutual, the contract was to be that usually provided for an insurable male, age 27. It is generally held by the authorities that a court of equity will not withhold relief where it is necessary in the interest of justice and of sound

public policy to enforce a contract which is inhibited by statute, but is not declared void, provided the parties are not in pari delicto. American National Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397, 400; Hayes v. Travelers Ins. Co., 10 Cir., Okla., 93 F.2d 568, 125 A. L. R. 1053; National Fidelity Life Ins. Co. v. Gerard, supra, 175 Okla. 219, 52 P.2d 1, 3; Kaufman v. New York Life Ins. Co., 315 Pa. 34, 172 A. 306; New York Life Ins. Co. v. Street, Tex. Civ. App., 265 S.W. 397; 1 Pomeroy's Equity Jurisprudence (Third Ed.), section 403; 44 C. J. S., Insurance, section 245, page 1014. The Ohio court, under a more stringent statute, seemed to reach the opposite conclusion in Young v. Metropolitan Life Ins. Co., 28 Ohio (N. P., N. S., 1930) 179.

We considered the application of this section of the Iowa Code in at least three previous cases and in none of them have we held a contract void, although the insurance companies may have acted in violation of both the letter and spirit of the law and subjected themselves to penalties by the state. Clausen v. New York Life Ins. Co., 224 Iowa 802, 808, 276 N.W. 427; Diehl v. American Life Ins. Co., 204 Iowa 706, 709, 213 N.W. 753, 755, 53 A. L. R. 1528; Graf v. Employers' Liability Assur. Corp., 190 Iowa 445, 450, 180 N.W. 297, 298.

We are satisfied the common good would not be harmed through occasional and inadvertent mistakes in the preparation of policies, and since the statute does not specifically provide that a contract which is issued in violation of the statute is void and the parties are not found in pari delicto, equity will be slow to deny relief upon the ground that the contract violates the nondiscrimination statute. Regardless of the import given this statute by the trial court, we are not basing our decision to reform the contract here upon that statute.

VI. Appellant contends the relief granted was not based on the issues raised by the pleadings and was not supported by the evidence, and that it did not conform to the prayer in the petition. Both the petition and the cross-petition prayed for general equitable relief, and a court of equity should under such circumstances grant any relief in line with the allegations of the petition which are sustained by the proof.

While it is true relief granted under the general prayer should be consistent with the issues, we think it so appears here where the prayer is for the establishment of the rights of the parties under the contract. 19 Am. Jur. 282; Wagner v. Northern Securities Co., 226 Iowa 568, 284 N.W. 461. Rule 249 contemplates such final court action. Then too this court has held again and again that if the judgment appealed from is correct, it is our duty in an equity case to affirm it although the reasons given by the trial court may not meet with our approval. Jefferies v. Fraternal Bankers' Reserve Society, 135 Iowa 284, 290, 112 N.W. 786, 14 Ann. Cas. 346; Lautenbach v. Meredith, 240 Iowa 166, 35 N.W.2d 870; Merkel v. Merkel, 247 Iowa 495, 73 N.W.2d 75; Wilkinson v. County Board of Education, 251 Iowa 876, 102 N.W.2d 924, and citations. This appeal brings into review the entire judgment and, as stated in RKO Distributing Corp. v. Film Center Realty Co., 53 Ohio App. 438, 443, 446, 5 N.E.2d 927, 929, 930: "* * * 'if the judgment is right for any reason it is the duty of the reviewing court to affirm it.' * * * This principle is especially applicable to a declaratory judgment * * *. It was incumbent upon the court to proceed as it did to determine all the facts from the admissions and evidence and apply not only rules of law but also equitable principles in reaching a conclusion as to the rights of the parties."

Thus we hold the trial court did not err in awarding the correct premiums for a twenty-payment life policy to defendant under the prayer for general equitable relief.

VII. While we are satisfied that the trial court's decree was proper, we realize it may be an undue hardship upon the insured to raise the amount necessary to pay defendant the deficiencies in premiums, with interest at 5% per annum from the respective due dates, less the premiums paid from 1956 to date, and in view of appellee's statement in court that it only desired to be made whole and would be satisfied with a reformation of the contract to provide an ordinary life policy, we think appellant should have his choice. He shall, therefore, have sixty days in which to elect to have the policy reformed to an ordinary life policy and continue to pay the premiums thereon, or comply

with the trial court's decree herein. Costs shall be taxed one fourth to appellee and three fourths to appellant.—Modified and affirmed.

All JUSTICES concur.