Carl J. GROSLAND, Plaintiff-Appellant,

v.

Gregg WYBORNY, Defendant-Appellee.

Carl J. GROSLAND and H. Arlene Grosland, Plaintiffs-Appellants,

v.

Gregg WYBORNY, Defendant-Appellee.

No. 86–723.

Court of Appeals of Iowa.

March 31, 1987.

Phillip N. Norland, Northwood, for plaintiffs-appellants.

John H. Greve, Northwood, for defendant-appellee.

Considered by SCHLEGEL, P.J., and HAYDEN, and SACKETT, JJ.

SACKETT, Judge.

Plaintiffs Carl J. and H. Arlene Grosland (landlords) leased an 80–acre tract of farmland in Worth County to Defendant Gregg Wyborny (tenant) for the term commencing March 1, 1984 and ending March 1, 1985. There was a written lease typed by Plaintiff Carl Grosland. The written lease was a cash rent lease and provided for cash rent of $9,100. The rent was to be paid in two installments; the first installment of $4,550 was due March 1, 1984, and the second installment of $4,550 due November 1, 1985.

The tenant entered into possession of the land and farmed it in the 1984 crop season. He paid the rent installment due March 1, 1984. After November 1, 1984, the landlord called the tenant to see where the November installment of rent was. The tenant said the second installment was not due until 1985. The landlord said the November 1, 1985, was a typographical error and it should have read November 1, 1984. The tenant claimed he had contracted to pay the second installment November 1, 1985.

On January 4, 1985, the landlords filed a petition in equity seeking reformation of the lease contending it was agreed between the parties the second installment of rent was due November 1, 1984, not 1985, as provided in the written lease. The landlords asked that the lease be reformed.

On January 23, 1985, the landlords filed a second action. The second action was at law. It alleged the second installment of rent had accrued and was unpaid although it was subject to a determination as to when due. The landlords requested a writ of attachment for landlords lien issue.

After the law action for landlords attachment was filed, the Worth County Clerk issued a landlords attachment directing the sheriff to levy on that personal property used or kept for sale on the premises in an amount necessary to satisfy the second installment. The sheriff subsequently levied on 2,000 bushels of tenant's corn. The tenant then counterclaimed for wrongful attachment. The actions were consolidated for trial. The trial court determined the lease was highly unusual and in all liklelihood not what the landlord intended. The court went on to determine the November 1, 1985 date was clearly stated and the landlord had failed to show a mutual mistake or deception by the tenant. The court dismissed the reformation action and went on to determine the landlords attachment was wrongful and awarded the tenant damages.

The landlords appeal contending (1) they were entitled to reformation, (2) the landlords attachment was not wrongful, and (3) the tenant was not entitled to damages.

### I. Reformation

Our review is de novo. Iowa R.App.P. 4. The proper relief for a mutual mistake of a material fact in a written instrument is reformation of the instrument to reflect the true intent of the contracting parties. *Kendall v. Lowther*, 356 N.W.2d 181, 187 (Iowa 1984). One who seeks reformation of a written instrument has the burden of establishing by clear and convincing evidence that the instrument does not reflect the true intent of the parties either because of fraud or duress, mutual mistake of fact, mistake of law, or mistake of one party and fraud or inequitable conduct on the part of the other. *Id.*

Landlord Carl Grosland testified negotiations before the lease was entered into resulted in an agreement that installments of cash rent would be due in March and November, 1984. The tenant denies there was any discussion as to when the rent installments were to be made. He testified the lease terms were to be put down on paper. The tenant testified when the written lease was prepared it provided for the second installment to be paid in 1985. He testified Carl Grosland read the lease to him with the 1985 date and he contends he

entered into the lease because of the marketing advantage he would have because of the extended date for payment of the second installment.

Carl Grosland and tenant both testified a cash rent payment deferred over one year past the harvest season was not standard farm leasing procedure. The trial court determined it was an unusual leasing procedure. We too determine it to be a very unusual and inconsistent with regular farm leasing practices for the landlord to agree to wait for cash rent until one year past the time crops are harvested.

In *Baldwin v. Equitable Life Assurance Company*, 252 Iowa 639, 108 N.W.2d 66 (1961), the insured received a 20–payment life policy. The 20–payment life policy was issued at about the same time and in the same amount of an ordinary life policy. *Baldwin*, 252 Iowa at 643, 108 N.W.2d at 69. In rejecting the insured's claim he should have the 20–year pay policy at the ordinary life rate, the Iowa court determined the life insurance business is so well established and controlled that the general public should be well aware of the differences between ordinary life contracts offered them by insurance companies and certain term payment life policies. *Baldwin*, 252 Iowa at 646, 108 N.W.2d at 70. The court found:

... A person would be suspect and not normal if, after discussing the differences with an agent, he would not be aware that a life policy requiring only twenty payments would require a larger premium than one where premiums were to be paid until death. We do not believe the plaintiff or his wife is in that class. He was therefore charged, as a reasonable ordinary person, with knowledge of that fact, and when the twenty-payment life contract did not show a larger premium than his ordinary life premium at the same age it was a mistake that he did or did not notice. If he did not notice it, the mistake was mutual. If he did notice the amount and said nothing, being under the false impression it was the correct one for such policy, the mistake was mutual, but if he noticed it and did not then call the company's attention to it, he was guilty of inequitable conduct. In any of these cases a court of equity should, unless for some other compelling reason, reform the contract to include the proper premium for the class of insurance involved.

*Baldwin*, 252 Iowa at 646, 108 N.W.2d at 70–71.

We determine the rationale of *Baldwin* applies here. The tenant was a farmer who grew up in a farm family. He had leased other farmland. He was aware of standard leasing procedures. He was aware that the date for payment of the second installment in the written lease was unusual and not in accord with accepted farm leasing practices. When the lease showed the November 1, 1985, date it was a mistake he did or did not notice. If he did not notice it the mistake was mutual. If he noticed it and did not, as he testified, call it to the landlords' attention, he was guilty of inequitable conduct. We determine the lease should be reformed to include the date of November 1, 1984 as the date the second installment of rent is due.

We have also considered *Hughes v. Cardinal Federal Savings & Loan Association*, 566 F.Supp. 834 (S.D.Ohio 1983). A portion of the loan agreements upon which suit was brought provided the lender was required to decrease interest rates as the "cost of money" increased. *Hughes*, 566 F.Supp. at 837. The court determined the language clearly was a typographical error and in holding it appeared to be a mutual mistake determined, i.e., it was *inconsistent with reasonable banking practices. Hughes*, 566 F.Supp. at 844.

**II. Wrongful Attachment**

The landlords argue the attachment was not wrong. Without addressing the effect of our determination that the lease should be reformed, we determine on the attachment issue the tenant has failed to show he was damaged by the attachment. The tenant contends and the trial court found the attachment was wrongful because the tenant was unable to market his grain. The landlords respond that irrespective of the attachment, at the time of attachment they

held a statutory landlords lien on the crops for unpaid rent.

Iowa Code § 570.1 (1985) provides:

**Liens created—property subjected.** A landlord shall have a lien for the rent upon all crops grown upon the leased premises, and upon any other personal property of the tenant which has been used or kept thereon during the term and which is not exempt from execution.

Iowa Code § 570.2 (1985) provides:

**Duration of lien.** Such a lien shall continue for the period of one year after a year's rent, or the rent of a shorter period, falls due. But in no case shall such lien continue more than six months after the expiration of the term.

The second installment admittedly was owed to the landlords. The total rent for the term was not yet paid when the writ of landlords attachment issued. The only issue is *when* the rent was to be paid. The landlords argue that, irrespective of when the second installment was to be paid, the tenant was not prejudiced by the attachment because irrespective of whether the rent was due or not, the landlords retained a landlords lien in the grain and the grain could not have been sold until the lien was released. The tenant argues the attachment was improper because no rent was accrued or due under the contract terms.

■ The tenant directs us to *Prudential Insurance Company v. Buss,* 240 Iowa 701, 703, 37 N.W.2d 300, 301 (1949), where the court says "accrued" means due. *See Clark v. Haynes,* 57 Iowa 96, 10 N.W. 292 (1881). The landlords argue the rent became *due* at the end of the term. It just was not payable. We agree with the tenant Iowa case law dictates an action to effect a landlords lien cannot be commenced before the rent is due. *Clark,* 57 Iowa at 98, 10 N.W. at 213. However, we also determine the date an action for attachment can be commenced is not determinative of when the lien comes into existence. The landlords lien given by statute is in effect a security interest which exists beforehand for payment of the rent as it comes due. *Garner v. Cutting,* 32 Iowa 547, 551 (1871); *Grant v. Whitwell,* 9 Iowa 152, 156–57 (1859).

■ the statutory lien created under § 570.1 does not demand rents be accrued in order for the lien to have attachment. Thus, irrespective of whether the rent was due or not the landlords had a lien on the crops for the unpaid second installment of rent when the writ of attachment issued.

While an action under the statute cannot be maintained until the rent is *due,* the courts have held the landlord can maintain an action to restrain destruction or waste prior to the time the rent is in fact due. *Clark,* 57 Iowa at 98, 10 N.W. at 293; *Garner v. Cutting,* 32 Iowa at 552–53. We therefore reject the tenant's claimed damages for the inability to market grain because of the attachment. Even if we had accepted tenant's argument the rent was not payable until November 1, 1985, there still would have been a statutory landlords lien on the crop which would have affected the tenant's ability to market until September 1, 1985, which is six months after the end of the term. *See* Iowa Code §§ 570.1 and 570.2. We fail to find sufficient evidence to support a holding the tenant was damaged by the attachment of 2,000 bushels of grain.

■ The trial court also awarded damages to the tenant for an additional 3,000 bushels of grain which was in the bin with the attached grain. The sheriff's return clearly shows only 2,000 bushels were attached. There being no showing of an attachment in excess of 2,000 bushels, we find no basis to assess damages for grain not attached.

WE REFORM THE LEASE AND REVERSE THE DAMAGES FOR WRONGFUL ATTACHMENT.